Delbert E. ELBRADER, Plaintiff,

v.

Kelly BLEVINS; Michael J. Sahadi; Ralph Romig; and the City of Burlington, Kansas, a municipal corporation, Defendants.

No. 88–4097–R.

United States District Court, D. Kansas.

Jan. 17, 1991.

Brad L. Jones and Bryan K. Joy, Joy &
Jones, P.A., Burlington, Kan., and Calvin
K. Williams, Calvin K. Williams, Chartered,
Carbondale, Kan., for plaintiff.

James S. Pigg, Fisher, Patterson, Sayler
& Smith, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This action was originally filed in the
District Court of Coffey County, Kansas.
It has been removed to this court. Plain-
tiff, Delbert E. Elbrader, is suing: Kelly
Blevins, a police officer for Burlington,
Kansas; Michael J. Sahadi, a former police
officer for Burlington, Kansas; Ralph
Romig, the chief of police for Burlington,
Kansas; and the City of Burlington, Kan-
sas. This lawsuit stems from plaintiff's
arrest on June 27, 1987 at the Cowboy Inn,
a tavern at Burlington, Kansas, and plain-
tiff's subsequent prosecution on charges
of: obstructing legal process, disorderly
conduct, and resisting arrest. Plaintiff al-
leges false arrest, malicious prosecution,
the use of excessive force, and illegal retal-
iation against the exercise of first amend-
ment rights. Plaintiff also alleges that de-
fendants Romig and the City of Burlington
have failed to properly investigate, train,
supervise and test the City's police officers,
and that plaintiff was harmed by this al-
leged dereliction of responsibility. Plain-
tiff's claims are made under state law and
42 U.S.C. § 1983.

This case is now before the court upon
defendants' motion for summary judgment
against all of plaintiff's claims, except
plaintiff's excessive force claim against de-
fendants Blevins and Sahadi. A motion
from defendants for separate trials is also
pending.

The following facts are either undisputed
or reflect a view of the evidence most fa-
vorable to plaintiff. On June 27, 1987,
defendants Blevins and Sahadi were assist-
ing the Coffey County Sheriff's Depart-
ment searching for an individual wanted on
a warrant. They entered the Cowboy Inn.
They were met by the bartender, George
Wolfe. Apparently, Mr. Wolfe raised some
issue regarding the officers' presence in
the bar. The officers, in turn, asked the
bartender for identification. Meanwhile,
plaintiff, a customer, sitting at the bar
some distance away, said: "If I still run
this son-of-a-bitch, I wouldn't put up with

that bullshit." At that time, defendant Blevins approached plaintiff and asked, "Who is the wiseass that called me a son-of-a-bitch?" Plaintiff responded by explaining that he did not call defendant Blevins a son-of-a-bitch and then repeated what plaintiff did say. Defendant Blevins next told the bartender not to serve plaintiff another drink because plaintiff was intoxicated. Plaintiff then ordered a beer and was arrested. According to plaintiff, defendants Blevins and Sahadi "just grabbed me and pulled me off the stool and slammed me up against the thing." Plaintiff denies resisting the officers. A blood alcohol test performed on plaintiff showed a result of .118.

Plaintiff was charged with obstructing legal process, disorderly conduct, and resisting arrest. The city prosecutor dismissed the resisting arrest charge. Plaintiff was acquitted of the disorderly conduct charge in Burlington Municipal Court. But, he was convicted in municipal court of obstructing legal process. Plaintiff appealed this conviction to district court. A jury trial was initiated, but the district judge granted plaintiff a directed verdict at the end of the prosecution's evidence. The district judge stated:

> [T]here's been no evidence presented that Mr. Elbrader was engaged in any conduct that was detrimental to the officers at that time or which hindered or increased their burden. That once they began to question Mr. Wolfe relative to his name and address, the conduct as complained of of Mr. Elbrader began and he began making loud statements. Those statements as expressed in the evidence were not to the officers and no testimony was presented that the officers even thought it was. At least not to the effect that he was going to stop them from doing what they were doing or that he was going to hinder them in doing it. The only hindrance alleged by the officer was that the noise was increased ... I do not believe that in a public place of business there is any statute which requires a person to be silent. I do not condone the conduct of Mr. Elbrader, but I believe that under the facts as alleged here

today, that he did not substantially hinder or increase the burden of the officers in the performance of their duty. I therefore direct a verdict in favor of Mr. Elbrader against the plaintiff in this matter and assess the costs against the City.

The Burlington Police Department has rules and regulations against discourteous or malicious behavior by police officers. The regulations also forbid false accusations regarding any criminal charge and mistreatment of persons in custody. Excessive force and false arrest are specifically prohibited by the regulations.

Background investigations and record checks were performed on defendants Blevins and Sahadi prior to their employment by the City of Burlington Police Department. Applicants for the Burlington police force must have a high school education, no felony convictions and be certified through a state law enforcement academy within one year.

Defendants Blevins and Sahadi each attended a state law enforcement academy. Both received psychological testing by the East Central Kansas Mental Health Center after they were hired by the City of Burlington. The psychological assessment of defendant Blevins stated in part:

> Adults scoring similar to Kelly are often described as rebellious, immature, self-centered, extroverted and impulsive. They are many times prone to unnecessary risk-taking behavior. He would be seen as independent and might demonstrate a reduced regard for social standards and values. Persons with similar scores frequently have a low frustration tolerance, are aggressive and have difficulty learning from experience. Judgment and planning are often impaired.
> ....
> *CONCLUSIONS:* Kelly was seen as an adaptable, resourceful and self-reliant person, with a generally positive self-concept and some adequately functioning coping mechanisms. His tendency to be impulsive and take unnecessary risks were of some concern, as were his low frustration tolerance and aggressiveness. His judgment and planning abilities would probably necessitate more than av-

erage need for close supervision in unusual situations. In normal day to day activities his judgment would most usually be adequate however.

The psychological assessment of defendant Sahadi stated in part:

People who score similar to this profile are generally conforming and conventional. They may have difficulty recognizing anger and dealing with it appropriately. They tend to be predictable.

They usually balance their interest in traditional male interests with aesthetic pursuits. Individuals with similar scores may be unwilling to admit to failings or weaknesses. They may be rigid, self-righteous and uncompromising. They may be generally positive and overlook problems and solutions.

. . . .

*CONCLUSIONS:* Michael Sahadi seemed to present himself as the MMPI profile indicated. . . . In general he seemed to have good insight into his reactions and attitudes. He enjoyed his reported reputation as a tough, hard uncompromising police officer. . . .

The pre-hire investigation of defendant Blevins showed that Blevins had a reputation for poaching deer which the Sheriff of Greenwood County said would have caused him not to hire defendant Blevins. Defendant Blevins also had a diverted charge of theft. The pre-hire investigation of defendant Sahadi showed that Sahadi had been forced to resign after a year in the Neosho County Sheriff's Office because of a personality conflict between Sahadi and the Sheriff of Neosho County.

During the time period from April 1986 until the date of the incident in question, there were three complaints filed against officers of the Burlington police force. One was a complaint of false arrest against defendant Blevins, and the other two complaints asserted excessive force by another officer of the Burlington police force. None of the complaints were against defendant Sahadi. After an arrest which led to one of the complaints, defendant Romig wrote to an officer on the force:

On the Vaughn individuals:

I am going to request additional charges on both of them.

On both, pedestrian under the influence also disorderly conduct.

On Clark Vaughn Battery on police officer.

On Ellen Vaughn obstructing legal process or official duty. (by failure to stop upon request, by trying to hide the bottle and by lying to you about it).

Frank, I am really surprised that an experienced officer like yourself didn't add at least battery against Vaughn. Any time you have to tussle with someone and even physically strike him, you are literally asking for a lawsuit if you don't PYOA by charging him with battery against you first. *ANY TIME* you have to tussle with *ANYONE*, add the charge of battery of a police officer against him. By definition, battery is the intentional touching or application of force in a rude manner. Which is exactly what he did to you.

*P.Y.O.A.! Do your job! Charge them!*

Defendant Romig is responsible for investigating all complaints concerning the conduct of Burlington police officers.

 In addressing defendants' arguments for summary judgment, we must consider whether the evidence, viewed in a light most favorable to plaintiff, together with plaintiff's arguments against summary judgment, raise any genuine dispute as to issues material to the claims attacked by defendants. See *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the evidence, viewed in a light favorable to plaintiff, is such that a reasonable jury could return a verdict in plaintiff's favor, summary judgment is not proper. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

 The court shall first examine whether summary judgment should be granted against certain claims against defendants Blevins and Sahadi. Initially, the court shall examine whether plaintiff's false arrest and malicious prosecution claims, state and federal, should be dismissed because, as defendants contend, plaintiff cannot prove an absence of probable cause for the

charges against him. It is agreed that the absence of probable cause is an essential element to plaintiff's claims of false arrest and malicious prosecution. At the outset, we will consider whether plaintiff's conviction in municipal court for obstructing legal process is conclusive proof of probable cause, even though the conviction was reversed subsequently. Plaintiff has argued that his conviction should not be considered conclusive proof of probable cause because the conviction occurred in municipal court and was overturned upon a directed verdict motion by the district judge.

The general rule in this situation is stated in RESTATEMENT (SECOND) OF TORTS § 667(1) (1977):

> The conviction of the accused by a magistrate or trial court, although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means.

Kansas courts have followed this rule. In *Smith v. Parman*, 102 Kan. 787, 172 P. 33 (1918), the court held that a conviction by a police judge was conclusive evidence of probable cause, even though the conviction was later appealed and plaintiff was then acquitted by a jury. In *Hill v. Day*, 168 Kan. 604, 215 P.2d 219 (1950), the court held that a police court conviction constituted conclusive proof of probable cause where there was no allegation that the conviction was obtained by fraud or perjury. There, the conviction was vacated when the city attorney failed to prosecute the case on appeal to district court. Finally, in *Earley v. Harry's IGA*, 223 Kan. 32, 573 P.2d 572 (1977), plaintiff brought a malicious prosecution action which arose from shoplifting charges. Plaintiff had been charged and found guilty of shoplifting in municipal court. Plaintiff appealed his conviction. At the trial before the district court, a judgment of acquittal was entered after witnesses necessary to establish a chain of custody of the merchandise did not appear. The Supreme Court of Kansas upheld summary judgment against the malicious prosecution claim stating:

> A conviction by a police court having jurisdiction of an offense for which one is arrested is conclusive on the issue of probable cause even though the case may later be dismissed in the district court by the prosecution following an appeal and even though the plaintiff is acquitted of the charge in the district court on appeal, unless the conviction in the police court was based upon perjured testimony, fraud, or corruption.

*Id.*

In the case at bar, plaintiff has made no claim of perjured testimony, fraud or corruption. While in other jurisdictions some exception might be made on the grounds suggested by plaintiff, or plaintiff's conviction in municipal court might be considered only *prima facie* evidence of probable cause (see Annot., 86 A.L.R.2d 1090 (1962)), we believe Kansas courts would apply a conclusive presumption of probable cause under the circumstances in this case.

It could be argued that a different rule should be applied to any § 1983 claim based on malicious prosecution or false arrest. But, as it appears that Kansas follows the common law rule employed by the majority of courts (see Annot., 86 A.L.R.2d 1090) and recommended by the Restatement, some showing must be made that Congress intended for a different rule to apply to actions under § 1983. See *Cameron v. Fogarty*, 806 F.2d 380 (2d Cir.1986) *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987) (common-law principles are properly incorporated under § 1983 absent evidence that Congress intended otherwise). We have no reason to believe that Congress intended a different rule for § 1983 actions. See *Bussard v. Neil*, 616 F.Supp. 854, 857 (M.D.Pa.1985) (prior traffic conviction conclusively establishes existence of probable cause regardless of reversal upon trial *de novo*—thus plaintiff cannot recover under § 1983 for malicious prosecution); see also, *Cameron v. Fogarty, supra* (conviction affirmed on appeal bars subsequent § 1983 action in nature of malicious prosecution, where there has been no suggestion of fraud or perjury); but see, *Brumfield v. Jones*, 849 F.2d 152 (5th Cir.1988) (reversal of conviction of appeal opens way for § 1983 false

arrest action). Moreover, if one construes defendant's argument as in the nature of collateral estoppel, we may be bound to follow the Kansas rule and grant preclusive effect to the municipal court conviction. See *Hubbert v. City of Moore*, 923 F.2d 769, 772–73 (10th Cir.1991) (in a § 1983 false arrest lawsuit arising from Oklahoma, Tenth Circuit applies Oklahoma law to grant preclusive effect to a probable cause finding in a criminal proceeding resulting in acquittal).

In summary, we conclude that plaintiff cannot prove an absence of probable cause for the charge of obstructing legal process. Therefore, the court shall dismiss any false arrest claim or any malicious prosecution claim, under state or federal law, which is based upon this charge.

■ Defendants further argue that this finding should bar plaintiff from bringing false arrest or malicious prosecution claims based upon the other two charges that were made against him, but were later dismissed. We agree with defendants that any false arrest claim should be dismissed. Plaintiff was only arrested once. Under the above-cited legal authority, we must find that there was probable cause for the arrest upon at least one of the three charges. We do not believe any damages for false arrest could flow from the addition of two other charges which arguably lacked probable cause. See *Foster v. Metropolitan Airports Commission*, 914 F.2d 1076, 1080 (8th Cir.1990) (probable cause for arrest for refusing to move a car is sufficient to dismiss an unlawful arrest claim, even though officer may not have had probable cause to arrest on other grounds for interference with officer's duties). But, we disagree with defendants as to the dismissal of malicious prosecution claims based on the other charges made against plaintiff.

■ Defendants cite the case of *Heilgeist v. Chasser*, 98 Wis.2d 97, 295 N.W.2d 26 (App.1980) for the proposition that dismissal of one count of a criminal complaint is not a favorable termination permitting a person to bring a malicious prosecution action where the person is convicted on an other count arising out of the same incident. In *Heilgeist*, the two defendants witnessed the plaintiff break open a door and grab and strike the plaintiff's daughter. They signed witness forms, and the district attorney filed a battery charge and a criminal damage to property charge against the plaintiff. The battery charge was dismissed and the plaintiff entered a plea agreement pursuant to which the criminal damage charge was reduced to disorderly conduct. The plaintiff's malicious prosecution action was dismissed on the grounds that the two defendants should not be held responsible for the charging decisions of the prosecutor, particularly when the plea to the disorderly conduct charge vindicated their belief that a crime had occurred. To hold otherwise, the court noted, would discourage citizens from reporting violations of the law. See also, *Ruff v. Eckerds Drugs, Inc.*, 265 S.C. 563, 220 S.E.2d 649 (1975) (store not liable for malicious prosecution when plaintiff was convicted of simple assault but acquitted of disorderly conduct arising from a shoplifting altercation).

The facts in this case, at least upon this motion for summary judgment, appear to be more similar to a line of federal cases arising from New York. In *Janetka v. Dabe*, 892 F.2d 187 (2d Cir.1989), the plaintiff was yelling and pointing his finger at another man when he was told by the defendant police officer that he might be arrested. Plaintiff responded with expletives and was then arrested for disorderly conduct. Plaintiff allegedly struggled with the police and was charged with resisting arrest. At the trial on criminal charges, plaintiff was found guilty of disorderly conduct but innocent of resisting arrest. Plaintiff brought a malicious prosecution action which the district court dismissed on the grounds of the conviction for disorderly conduct. The Second Circuit reversed this decision noting that plaintiff had been charged with two distinct offenses involving distinct allegations. The allegations involved actions directed at different people, according to the appeals court. Further, neither charge was a lesser included offense of the other. The circuit court

appeared concerned that plaintiff had been acquitted of a charge more serious than the charge of conviction. Holding otherwise, according to the appeals court, might allow police officers to add unsupported serious charges to legitimate minor charges with impunity. See also, *Graebe v. Falcetta*, 726 F.Supp. 36 (E.D.N.Y.1989) (conviction for speeding does not bar malicious prosecution action stemming from acquittal on charges of resisting arrest and attempted escape); *Katz v. Morgenthau*, 709 F.Supp. 1219, 1232 n. 3 (S.D.N.Y.1989) (plaintiff brings malicious prosecution action stemming from acquittal on misdemeanor coercion charges even though plaintiff was convicted of aggravated harassment); but see, *Goree v. Gunning*, 738 F.Supp. 79 (E.D.N.Y.1990) (convictions for resisting arrest, disorderly conduct and harassment bar malicious prosecution claim based on acquittal on charges of possession of a weapon and menacing).

In the case at bar, the charges were brought by police officers, not laypersons. We assume from the comments of the district court judge that the charge of obstructing legal process was related to plaintiff's comments while Officers Blevins and Sahadi were asking the bartender at the Cowboy Inn for identification. The charge of resisting arrest obviously relates to conduct after plaintiff was arrested. It is difficult to determine from the record what activity plaintiff's disorderly conduct charge was meant to cover and whether the conduct occurred before or after plaintiff's arrest. The three charges against plaintiff were distinct. They each have different elements. The charges are not lesser included offenses of each other. The resisting arrest charge appears to involve clearly different conduct from the obstructing legal process charge. It is impossible to tell whether the disorderly conduct charge involved different conduct. We do not know if any one charge was more serious than the other charges.

Because the persons bringing the charges in this case were not laypersons, and because the charges involve different conduct or arguably different conduct, the court shall not grant summary judgment

against a malicious prosecution action, under federal or state law, which is founded upon the charges of disorderly conduct or resisting arrest. The connection between the disorderly conduct charge and the obstructing legal process charge can be considered again at trial. But, the resisting arrest charge is clearly separate and distinct from the obstructing legal process charge.

■ Defendants further argue as grounds for summary judgment that the facts demonstrate Officers Belvins and Sahadi had probable cause for charging plaintiff with disorderly conduct and resisting arrest. We believe there is a genuine issue for the jury here. See *DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir., 12/31/90, slip op. at 11) ("We have long recognized that it is a jury question in a civil rights suit whether an officer had probable cause to arrest.").

"Disorderly conduct" under K.S.A. 21–4101 includes: "Using offensive, obscene, or abusive language or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others." While plaintiff admits using a profane term, the court does not believe the use of any profanity supplies probable cause for an arrest for disorderly conduct. Obviously the statute requires that the language tend "reasonably to arouse alarm, anger or resentment in others." A jury must examine the context of the statements and conduct at issue in this case to determine whether there was probable cause to believe that plaintiff's actions met this standard. See *Brumfield v. Jones, supra*, 849 F.2d at 156.

Similarly, defendants contend that plaintiff admitted that he "tensed" his arms when he was arrested and that this admission is sufficient to establish probable cause for the resisting arrest charge. Plaintiff has denied in his deposition that he resisted arrest. The admission that he tensed his body when, according to plaintiff, he was pulled off a bar stool by Officers Blevins and Sahadi, is not sufficient to eliminate a jury question on the issue of

probable cause for a resisting arrest charge.

■ The next defense the court shall consider is qualified immunity. Defendants Blevins and Sahadi contend that they are entitled to summary judgment upon any § 1983 claims on the grounds of qualified immunity. Defendants are entitled to this defense if a reasonable officer could have believed that plaintiff's arrest and prosecution was constitutionally permissible, in light of clearly established law and the information defendants possessed at the time. *Martin v. Board of County Commissioners,* 909 F.2d 402, 405 (10th Cir.1990); *Mann v. Purcell,* 718 F.Supp. 868, 875 (D.Kan.1989). The following analysis of qualified immunity questions on summary judgment has been offered by the Tenth Circuit.

> Once the defense has been raised and the plaintiffs have met their burden of identifying both the clearly established law that the government official is alleged to have violated and the conduct that violated that law, the defendant must demonstrate that no material issues of fact remain as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time. A defendant who makes such a showing of objective reasonableness is entitled to summary judgment unless the plaintiff can demonstrate that there are factual disputes relevant to the defendant's claim to immunity.

*Martin v. Board of County Commissioners, supra,* 909 F.2d at 405, (quoting other Tenth Circuit cases).

There is no question but that plaintiff had a clearly established right against arrest and prosecution without probable cause. See *Trejo v. Perez,* 693 F.2d 482, 488 n. 10 (5th Cir.1982) ("A police officer ... is ordinarily charged to know the probable cause requirement."). The issue is whether Officers Blevins and Sahadi's arrest of plaintiff was objectively reasonable or whether genuine issues of fact prevent the court from making this decision on summary judgment. The court does not

believe it is objectively reasonable to arrest someone for ordering a beer or for criticizing the police. Cf., *Duran v. City of Douglas,* 904 F.2d 1372 (9th Cir.1990) (officer not entitled to qualified immunity for arresting someone on disorderly conduct charge who made obscene gestures and yelled profanities at officer); *Brumfield v. Jones, supra,* 849 F.2d at 155 (summary judgment for defendants reversed where plaintiff alleged he was arrested for calling officers "dummies"); *Bailey v. Andrews,* 811 F.2d 366 (7th Cir.1987) (no immunity for officer who arrested plaintiff for disorderly conduct after plaintiff said, "I want my damn dog" and "did you shoot my dog?"). The court is not making inferences regarding defendants' subjective motivation for the arrest. See *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (under "objective legal reasonableness standard" for qualified immunity, courts are not to delve into the subjective motivation of an arresting officer). The court simply cannot say on this record that a reasonable person would believe that plaintiff was engaged in disorderly conduct. Nor is it objectively reasonable to charge someone with resisting arrest if that person did not resist arrest. That is a reasonable way of looking at the limited amount of undisputed evidence before the court. Therefore, the court cannot grant summary judgment to defendants Blevins and Sahadi on qualified immunity grounds.

■ The court shall now examine plaintiff's first amendment claim. Defendants contend first that this claim is only directed at defendants Blevins and Sahadi. The court agrees. There appears to be no claim of a policy or custom of arresting people in retaliation for the exercise of free speech. Defendants next argue that plaintiff's first amendment claim should be dismissed because plaintiff did not engage in protected speech on the night in question. Defendants assert that plaintiff's remarks were not protected speech because they did not address a matter of general public concern. The court does not believe the "public concern" analysis is appropriate here as opposed to cases where public employment or

some benefit is terminated by a state agency in retaliation for the verbal conduct of a person. The Supreme Court has stated:

> [T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.... The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.

*Houston v. Hill*, 482 U.S. 451, 461–63, 107 S.Ct. 2502, 2509–10, 96 L.Ed.2d 398 (1987).

The court is not stating that "fighting words" are protected speech. But, it is unclear whether plaintiff engaged in fighting words. The Kansas Court of Appeals has stated:

> [T]o be fighting words defendant's language must have been such as to tend to incite an assault or other immediate breach of the peace by the officers to whom they were addressed.
>
> . . . .
>
> We prefer the ultimate concept expressed by the Minnesota Supreme Court in *City of St. Paul v. Morris*, 258 Minn. [467] at 468–69, 104 N.W.2d 902 [ (1960) ]:
>
> > "While it is obvious that not every abusive epithet directed toward police officers would be sufficiently disturbing or provocative to justify arrest for disorderly conduct, there is no sound reason why officers must be subjected to indignities such as present here, indignities that go far beyond what any other citizen might reasonably be expected to endure."
>
> . . . .
>
> [W]hat is disorderly conduct depends upon the totality of the circumstances in any given case.

*State v. Beck*, 9 Kan.App.2d 459, 682 P.2d 137, 139–40 (1984). Plaintiff has admitted that calling someone a "son-of-a-bitch" might lead to a fight. But, so far, the record does not establish that plaintiff called anyone a "son-of-a-bitch". Nor is it clear at the time plaintiff was arrested that Officers Blevins or Sahadi thought plaintiff had called anyone a "son-of-a-bitch". Even

if Officer Blevins thought plaintiff did call him a "son-of-a-bitch," not every epithet directed at a police officer constitutes "disorderly conduct." In sum, the context of plaintiff's and defendants' conduct is not sufficiently clear to hold that plaintiff's speech was unprotected by the Constitution.

■ Defendants have further argued that they are entitled to qualified immunity against any liability upon plaintiff's first amendment claim. This argument shall be rejected. Examining the record in a light favorable to plaintiff, we cannot hold that defendants are entitled to qualified immunity. There is a clearly established right against retaliation for constitutionally protected speech. *Norwell v. City of Cincinnati*, 414 U.S. 14, 16, 94 S.Ct. 187–88, 38 L.Ed.2d 170 (1973). As discussed earlier in connection with qualified immunity argumentation, the *Duran* case from the Ninth Circuit and the *Bailey* case from the Seventh Circuit suggest that qualified immunity should not be applied upon the circumstances argued to this court. See also, *Brumfield v. Jones, supra*, 849 F.2d at 156 (summary judgment for defendants reversed where plaintiff alleged he was arrested for making annoying and critical comments to police officers); *Losch v. Borough of Parkesburg*, 736 F.2d 903 (3d Cir. 1984) (no qualified immunity for officer who allegedly brought charges under a harassment statute in retaliation against person who posted a note on police station door complaining of being picked on and threatening to make a complaint to District Attorney).

■ Defendants have also argued that plaintiff cannot demonstrate he would not have been arrested but for his constitutionally protected speech, since there was probable cause for his arrest on other grounds. We are unwilling to grant summary judgment on this basis. So far, the only probable cause finding the court has recognized in this case is that which stems from plaintiff's conviction of obstruction of legal process by a municipal court judge. Thus, we are revisited with the question of whether the municipal court conviction should bar

plaintiff's § 1983 claim. This time, however, the § 1983 claim alleges a violation of plaintiff's first amendment rights. We do not believe the municipal court conviction should bar plaintiff's first amendment claim. The conduct which led to the conviction is the same conduct which plaintiff asserts is constitutionally protected. But, the municipal court judge apparently was not called upon to determine whether the conduct was constitutionally protected. Nor was the municipal judge concerned with defendants' motivation for making the arrest. These are issues of significance to plaintiff's first amendment claim.

Defendant's "but for" argument is similar to the qualified immunity argument because it suggests there was an objectively reasonable basis for plaintiff's arrest. But in a somewhat similar situation, the Tenth Circuit recently has affirmed a denial of qualified immunity. In *DeLoach v. Bevers, supra*, the defendant allegedly brought charges in retaliation for the plaintiff's decision to hire an attorney after the plaintiff became a criminal suspect. The Tenth Circuit affirmed an award in favor of the plaintiff, stating:

> "An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir.1984); *see also Norwell v. City of Cincinnati*, 414 U.S. 14, 16, 94 S.Ct. 187, 188, 38 L.Ed.2d 170 (1973); *Haynesworth v. Miller*, 820 F.2d 1245, 1257 (D.C.Cir.1987); *Losch v. Borough of Parkesburg*, 736 F.2d 903, 907–08 (3d Cir.1984). The unlawful intent inherent in such a retaliatory action places it beyond the scope of a police officer's qualified immunity if the right retaliated against was clearly established. *See Coen v. Runner*, 854 F.2d 374, 378–79 (10th Cir.1988); *Losch*, 736 F.2d at 909–10.

922 F.2d at 620. See also, *Foster v. Metropolitan Airports Commission, supra*, 914 F.2d at 1080 (an officer's reason for making an arrest may be relevant when the claimant alleges that he was arrested for exercising his right to speak freely *and*

there was no other basis to justify the arrest); *Pueblo Neighborhood Health Centers, Inc.*, 847 F.2d 642 (10th Cir.1988) (inquiry into subjective factors of government official's motivation is appropriate, for purposes of doctrine of qualified immunity if applicable substantive law makes official's state of mind an essential element of plaintiff's claim); but see, *Gorra v. Hanson*, 880 F.2d 95 (8th Cir.1989) (subjective motivation of arresting officers not considered, in spite of dissent arguing that arrest may have been in retaliation for having advised someone to speak only to a lawyer).

For the reasons and authorities cited above, we do not believe the municipal court conviction, which was subsequently overturned on a directed verdict motion, makes defendants Blevins and Sahadi's conduct objectively reasonable or otherwise forecloses plaintiff's prosecution of the first amendment claim. Cf., *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (a judge's issuance of a search warrant upon facts which officer believes are true, does not mean officer's behavior was objectively reasonable, if a well-trained officer would have known that the facts failed to establish probable cause). If defendants are able to demonstrate that plaintiff would have been arrested and prosecuted absent the alleged constitutionally protected speech, defendants may be entitled to dismissal of plaintiff's first amendment claim. But, defendants have not made such a demonstration with their summary judgment motion.

We now turn to the arguments in favor of summary judgment on behalf of defendants Romig and the City of Burlington. First, these defendants contend that summary judgment is proper because there was probable cause for plaintiff's arrest and prosecution. To the extent we have rejected that argument above, we continue to reject it here. Defendants Romig and the City of Burlington also argue that plaintiff's constitutional rights were not violated. But, also as explained above, this has not been established for summary judgment. Therefore, defendants Romig

and the City of Burlington are not entitled to summary jugdment on these grounds.

 More significantly, defendants Romig and the City of Burlington contend that plaintiff cannot establish the existence of a municipal policy that caused the alleged violation of his constitutional rights. "[M]unicipalities and their supervisory personnel are not liable for civil rights violations caused by individual police officers employed by the municipalities unless the plaintiff demonstrates '[a]n affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy—express or otherwise—showing their authorization or approval of such misconduct.'" *D.T. by M.T. v. Independent School District No. 16*, 894 F.2d 1176, 1187 (10th Cir.) *cert. denied*, — U.S. ——, 111 S.Ct. 213, 112 L.Ed.2d 172 (1990) quoting, *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976). There can only be liability if plaintiff demonstrates a *"direct causal connection* between the hiring, investigative, and supervising policy in question and the alleged constitutional deprivation." *Id.* at 1188, citing *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Furthermore, where a failure to train is alleged, a city is not liable under § 1983 unless the failure to train amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact. *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 1205-06, 103 L.Ed.2d 412 (1989).

In the instant case, there is evidence of one complaint of false arrest against defendant Blevins and two complaints of excessive force against another police officer of the City of Burlington between April 1986 and the date of the incident in question, June 1987. The court takes note that the City of Burlington is not a large city. This number of complaints within a relatively short period of time raises an issue regarding the official policy towards the use of force and arrest powers by Burlington police officers. There is evidence of information in the background of defendants Blevins and Sahadi or in their psychological

assessments which arguably should have prevented their employment as police officers. In addition, defendant Romig wrote a memo to a member of the police force which could be construed as promoting the stacking of unwarranted charges. Finally, we take note that in a similar case stemming from one of the complaints concerning a police officer of the City of Burlington, Judge Saffels of this district denied summary judgment in favor of defendants Romig and the City of Burlington. *Vaughn v. Salinas*, Case No. 88-4094-S, 1989 WL 161498, 1989 U.S.Dist.LEXIS 15894 (D.Kan. 12/26/89).

In light of this evidence and the prior precedent within the district, the court shall not grant summary judgment in favor of defendants Romig and the City of Burlington.

Finally, the court acknowledges that defendants have filed a motion for separate trials of the claims against defendants Sahadi and Blevins and those against defendants Romig and the City of Burlington. No opposition to the motion has been filed. This is a matter for the court's discretion. Under FED.R.CIV.P. 42(b), the court may order separate trials "to avoid prejudice." The court is sensitive to the problem of evidence of other incidents, which is relevant to proving a policy or custom of the City, being introduced to the prejudice of the individual defendants. In the case of *Ismail v. Cohen*, 706 F.Supp. 243 (S.D.N.Y. 1989), separate trials were ordered because of this problem, although this does not appear to be the normal practice in cases such as this. The court will continue to consider this problem in the context of the claims and evidence in this case. The court may decide to have the same jury separately try in order the issues of: liability of defendants Sahadi and Blevins; liability of defendants Romig and the City of Burlington; and plaintiff's damages, including any claims of punitive damages. But, for now, the court shall maintain the motion for separate trials under advisement.

In conclusion, summary judgment is granted in favor of all defendants against any claims, under state or federal law, of

false arrest—that is, arrest without probable cause. Any claim of malicious prosecution stemming from plaintiff's prosecution on charges of obstructing legal process is also dismissed on summary judgment. Plaintiff's claims, under state or federal law, of malicious prosecution stemming from the charges of resisting arrest or disorderly conduct, remain in this case. Plaintiff's first amendment claim also remains in this case. Defendants Blevins' and Sahadi's claims of qualified immunity are denied at this juncture. Defendants Romig and the City of Burlington are also denied summary judgment as to all claims not dismissed in this order, except for plaintiff's first amendment claim. The court shall dismiss any first amendment claim against defendants Romig and the City of Burlington. Finally, defendants' motion for separate trials shall continue under advisement. The parties are invited to supply further input on this motion if they wish to do so.

IT IS SO ORDERED.