**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 13, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DANIEL N. STEARNS,

        Plaintiff - Appellee,

v.

FLOYD E. CLARKSON,

        Defendant - Appellant,

THE BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY OF
COWLEY, KANSAS; CHRISTOPHER
SMITH, County Attorney for Cowley
County; BOB G. ODELL, Sheriff of Cowley
County; TOM CAMPBELL, Cowley County
Sheriff Deputy; JEFF ELSTON, Cowley
County Sheriff Deputy; DOUG ALLISON,
Cowley County Sheriff Deputy; STEVEN
DEILL; CITY OF WINFIELD, KANSAS;
JERRY DEVORE, Chief of the Winfield
Police Department; STEVE BUMPAS,
Cowley County, Kansas, Sheriff Corrections
Officer; ROGER DOBBS, Cowley County,
Kansas, Corrections Officer,

        Defendants.

----------------------
DANIEL N. STEARNS,

        Plaintiff - Appellee,

      v.

No. 09-3103

No. 09-3110

CHRISTOPHER SMITH, County Attorney for Cowley County; TOM CAMPBELL, Cowley County Sheriff Deputy; STEVE BUMPAS, Cowley County, Kansas, Sheriff Corrections Officer,

Defendants - Appellants.

FLOYD E. CLARKSON; THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF COWLEY, KANSAS; BOB G. ODELL, Sheriff of Cowley County; JEFF ELSTON, Cowley County Sheriff Deputy; DOUG ALLISON, Cowley County Sheriff Deputy; STEVEN DEILL; CITY OF WINFIELD, KANSAS; JERRY DEVORE, Chief of the Winfield Police Department; ROGER DOBBS, Cowley County, Kansas, Corrections Officer,

Defendants.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS (D. Ct. No. 6:07-CV-01145-MLB-KMH)**

---

Daniel E. Lawrence (Stephen E. Robison and Lyndon W. Vix, on the brief), Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, Kansas, appearing for Appellant Clarkson.

Edward L. Keeley, McDonald, Tinker, Skaer, Quinn & Herrington, P.A., Wichita, Kansas, appearing for Appellants Smith, Campbell, and Bumpas.

Michelle K. Moe, Joseph & Hollander, P.A., Wichita, Kansas, appearing for Appellee.

---

Before **TACHA**, **HOLLOWAY**, and **HARTZ**, Circuit Judges.

**TACHA**, Circuit Judge.

This case arises out of the arrest and strip search of plaintiff-appellee Daniel N. Stearns in Winfield, Kansas on March 23, 2006. Mr. Stearns filed a civil rights suit under 42 U.S.C. § 1983 against Cowley County, the City of Winfield, and nine individual law enforcement officials, alleging violations of his Fourth Amendment right to be free from unreasonable searches and seizures. Defendants Floyd Clarkson, Tom Campbell, Steve Bumpas, and Christopher Smith filed motions for summary judgment based on qualified immunity, which the district court denied. They now appeal. Because defendants contend that even under the plaintiff's version of the facts, they did not violate clearly established law, we have jurisdiction under 28 U.S.C. § 1291. *Johnson v. Martin*, 195 F.3d 1208, 1214 (10th Cir. 1999). We AFFIRM in part and REVERSE in part.

## I. BACKGROUND

In March 2006, Mr. Stearns, a resident of Sweetwater, Texas, traveled to Winfield, Kansas to attend his father's funeral. Mr. Stearns's father had been shot and killed by law enforcement officers following the commission of a crime. While in Winfield, Mr. Stearns stayed with his paternal grandparents.

On March 21, 2006, Winfield Police Officer Ryan Walker stopped Mr. Stearns for speeding.[1] Officer Walker's report describes Mr. Stearns's initial behavior as rude and

---

[1]The parties' briefs open with a discussion of a 911 call made by an employee at a
(continued...)

profane. After Mr. Stearns explained the circumstances of his father's death, however, his attitude changed and he was far more polite. Ultimately, Officer Walker gave Mr. Stearns a verbal warning, but did not issue him a citation.

Two days later, on March 23, 2006, Mr. Stearns knocked on the door and/or rang the doorbell at Winfield Police Officer Greg Venable's home for approximately thirty seconds just after midnight. When no one answered, Mr. Stearns walked back to his car and drove away. Mrs. Venable, who was home at the time, immediately called her husband who was on duty. Although she did not answer the door or talk to Mr. Stearns, she claims she heard him say the word "later" as he departed. Mrs. Venable gave a physical description of Mr. Stearns to her husband as well as a description of the car he had been driving.

Around 3:30 a.m. that morning, Officer Venable spotted a car matching his wife's description and followed it until the driver, Mr. Stearns, parked and exited the vehicle. Officer Venable approached Mr. Stearns, demanding to know where Mr. Stearns had been earlier that night. Mr. Stearns told Officer Venable to mind his own business and not to worry about where he had been. During the interaction, Mr. Stearns said to Officer Venable, "you're probably the mother f***** that shot my dad." When Officer Venable declined to discuss the incident, Mr. Stearns repeated the epithet in reference to other

_____

    (....continued)
Winfield bar concerning a statement Mr. Stearns allegedly made about local law enforcement. The call is irrelevant to this appeal, however, because the facts, taken in the light most favorable to Mr. Stearns, do not show that any of the defendants in this appeal knew of it at the time he was arrested or strip searched.

officers. Nevertheless, after Mr. Stearns complied with a request for identification, Officer Venable thanked him for his cooperation and left.

Later that day, at approximately 7:30 a.m., Officer Venable told Lieutenant Kurt Weber about the incident at his house and his encounter with Mr. Stearns. Lieutenant Weber then visited with Cowley County Attorney Christopher Smith and discussed the incidents. From Lieutenant Weber's account of the facts, Mr. Smith concluded there was probable cause to arrest Mr. Stearns for disorderly conduct on either incident. Mr. Smith later confirmed his conclusion in a phone call with Winfield Police Chief Jerry DeVore. According to Chief DeVore, Mr. Smith "informed him that [he] believed there was probable cause to arrest Stearns for disorderly conduct and that Stearns should be arrested before something else happened."

At approximately 11:23 a.m., Lieutenant Weber sent out the following page to Winfield Police officers: "Kurt (Weber) talked with Chris Smith, if anyone comes in contact with Daniel N. Stearns go 10-15 (arrest) for Disorderly from the case at 322's (Officer Venable's) house last night, if you do not know about this case you can call the PD and we will fill you in." The officers never obtained a warrant for Mr. Stearns's arrest.

When Officer Floyd Clarkson came on duty at 4:00 p.m. that day, his first assignment was to arrest Mr. Stearns. Officer Clarkson, Deputy Sheriff Tom Campbell, and three other deputies went to Mr. Stearns's grandparents' home to arrest him for disorderly conduct. When they arrived at the home, Officer Clarkson and Deputy

Campbell knocked on the front door while the other deputies were in "cover" positions. A female answered and the officers asked for Mr. Stearns. When Mr. Stearns came to the door, Deputy Campbell grabbed his hand and pushed him up against the wall, and Officer Clarkson handcuffed him. Deputy Campbell placed Mr. Stearns in the front seat of his patrol car but did not pat search him for weapons. Deputy Campbell then transported Mr. Stearns to the Cowley County jail alone.

Upon arriving at the jail, Mr. Stearns was pat searched and taken directly to a holding cell. The officers did not find any weapons, drugs, or contraband during the pat search. After the officers placed Mr. Stearns in the holding cell, Sergeant Steve Bumpas, a corrections officer at the jail, arrived and strip searched him. Sergeant Bumpas made the decision to strip search Mr. Stearns before he was booked to make sure he was unarmed. Like the pat search, the strip search did not reveal any weapons, drugs, or contraband.

About an hour after the strip search, officers escorted Mr. Stearns to the booking room. Because he refused to answer some of the booking questions, however, Mr. Stearns was not finally booked and released on bond until approximately 11:10 p.m. that day. He was never placed in the jail's general population.

Mr. Stearns filed this § 1983 lawsuit on May 23, 2007, alleging violations of his Fourth Amendment rights, as well as statutory and common law tort claims under state law. After limited discovery, all defendants moved for summary judgment. Specifically, Officer Clarkson, Deputy Campbell, Sergeant Bumpas, and Mr. Smith sought summary

judgment based on qualified immunity.  On March 23, 2009, the district court denied

their motions but granted summary judgment to all other defendants.[2]  They now appeal.

## II.  DISCUSSION

"The doctrine of qualified immunity protects government officials from liability

for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Pearson v.*

*Callahan*, 129 S. Ct. 808, 815 (2009) (quotations omitted).  Once a defendant claims

qualified immunity, the plaintiff must establish two things to avoid summary judgement:

"(1) that the defendant's actions violated a constitutional or statutory right and (2) that the

right was clearly established at the time of the defendant's unlawful conduct."  *Serna v.*

*Colo. Dep't of Corr.*, 455 F.3d 1146, 1150 (10th Cir. 2006).  This court has discretion to

address these inquiries in any order.  *Pearson*, 129 S. Ct. at 821.  Furthermore, we review

the denial of qualified immunity de novo, construing the record in the light most

favorable to the nonmoving party.  *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th

Cir. 2008).

A.     Clearly Established Rights

The district court correctly noted that the rights at issue in this case are clearly

established.  "The relevant, dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable officer that his conduct was

---

[2]The district court declined to exercise jurisdiction over Mr. Stearns's state law
claims against the defendants who were granted summary judgment, dismissing the
claims without prejudice.

unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999) (quotations omitted).

Under this circuit's case law, it is clearly established that an officer may not arrest an individual without a warrant unless there is probable cause. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1071 (10th Cir. 2009). It is also clearly established that "a detainee who is not placed in the general prison population cannot be strip searched if the searching officer does not at least have reasonable suspicion that the detainee possesses concealed weapons, drugs, or contraband." *Archuleta v. Wagner*, 523 F.3d 1278, 1286 (10th Cir. 2008). Because the rights at issue in this case are clearly established, the defendants are only entitled to qualified immunity if, based on the facts as viewed in the light most favorable to Mr. Stearns, no reasonable jury could find that the defendants violated those rights.

B.    Violation of Constitutional Rights

1.    *Unlawful Arrest: County Attorney Smith, Officer Clarkson, Deputy Campbell*

Generally, a warrantless arrest is constitutionally valid when an officer has probable cause to believe that the arrestee committed a crime. *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). "When a warrantless arrest is the subject of a § 1983 action,

the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *York*, 523 F.3d at 1210. Thus, "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quotations omitted).

a.      County Attorney Smith

Mr. Stearns alleges that County Attorney Smith violated his Fourth Amendment rights by ordering his arrest without probable cause.  On appeal, Mr. Smith argues that he is entitled to qualified immunity because he had a reasonable belief that probable cause existed to arrest Mr. Stearns for disorderly conduct.[3]

Kan. Stat. Ann. § 21-4101 provides, in relevant part:

> **21-4101.  Disorderly conduct.**  Disorderly conduct is, with knowledge or probable cause to believe that such acts will alarm, anger or disturb others or provoke an assault or other breach of the peace:
> . . .
> (c) Using offensive, obscene, or abusive language or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others.

"Since 1980, [however,] this section has been limited to words which by their very utterance inflict injury or tend to incite an immediate breach of the peace [i.e., 'fighting words']." *Cook v. Bd. of Cnty. Comm'rs*, 966 F. Supp. 1049, 1052 (D. Kan. 1997) (citing *State v. Huffman*, 612 P.2d 630, 635 (Kan. 1980)).  Furthermore, the Supreme Court has

---

[3] Mr. Smith admits for the sake of appellate review only that he "ordered" Mr. Stearns's arrest.

held that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). Thus, "it is [not] objectively reasonable to arrest someone for . . . criticizing the police," and "not every epithet directed at a police officer constitutes 'disorderly conduct.'" *Elbrader v. Blevins*, 757 F. Supp. 1174, 1181, 1182 (D. Kan. 1991).

Mr. Smith contends that he reasonably believed that probable cause existed to arrest Mr. Stearns for two separate incidents: (1) the episode at Officer Venable's house and (2) Officer Venable's interaction with Mr. Stearns three hours later. We disagree.

First, Mr. Smith maintains that Mr. Stearns's 12:30 a.m. visit to Officer Venable's house provided him with a reasonable belief that probable cause existed. The undisputed facts, however, show that Mr. Smith knew only the following: Mr. Stearns's father had been killed by local law enforcement officers and Mr. Stearns was upset with police, Mr. Stearns knocked on Officer Venable's door just after midnight but left when no one answered the door, and Mrs. Venable claimed she overheard Mr. Stearns say the word "later." These facts would not lead a reasonable person to conclude that probable cause existed to arrest Mr. Stearns for disorderly conduct.

Second, Mr. Smith maintains that he reasonably believed probable cause existed based on Mr. Stearns's conduct during his interaction with Officer Venable around 3:30 a.m. that same day. Mr. Smith claims that prior to ordering Mr. Stearns's arrest he was told that during the early-morning interaction Mr. Stearns was loud, belligerent, smelled of alcohol, and pointed his finger at Officer Venable while using profanity. At the time

Mr. Smith ordered the arrest, however, it was well-settled that profanity, especially toward police officers, does not amount to a violation of the disorderly conduct statute unless it constitutes "fighting words." *Huffman*, 612 P.2d at 635; *Elbrader*, 757 F. Supp. at 1180. Moreover, none of the additional facts allegedly known by Mr. Smith could have converted Mr. Stearns's statements to Officer Venable into a threat. Thus, it was unreasonable for Mr. Smith to believe that probable cause existed to arrest Mr. Stearns. Accordingly, the district court properly denied his motion for summary judgment based on qualified immunity.

b.      Officer Clarkson

Mr. Stearns alleges that Officer Clarkson violated his constitutional rights by arresting him without a warrant and without probable cause. Officer Clarkson maintains that he actually had probable cause to arrest Mr. Stearns for disorderly conduct, and that even if he did not, his belief that probable cause existed was reasonable.

As discussed above with regard to Mr. Smith, Mr. Stearns's use of profanity and his criticism of police did not provide probable cause to arrest him for disorderly conduct. Furthermore, Officer Clarkson did not possess additional evidence or knowledge that would support a finding of probable cause. Accordingly, Officer Clarkson did not actually have probable cause to arrest Mr. Stearns.

Likewise, Officer Clarkson could not have reasonably believed that probable cause existed. Officer Clarkson primarily argues that he was aware his superiors had consulted with Mr. Smith, and that he assumed Mr. Smith had determined there was probable cause

to arrest Mr. Stearns.[4]  According to Officer Clarkson, his knowledge regarding Mr. Smith's determination of probable cause coupled with his knowledge of the incidents involving Mr. Stearns, make his independent belief that probable cause existed reasonable.

Under certain circumstances, we have recognized that an officer's receipt of a prosecutor's pre-arrest probable cause determination supports the officer's qualified immunity defense.  *See Lavicky v. Burnett*, 758 F.2d 468, 476 (10th Cir. 1985) ("If the sheriff's duty is unclear, it should be a defense that he relied upon the advice of the prosecuting attorney's office.").  We have never held, however,  that an officer's receipt of a favorable probable cause determination from a prosecutor prior to making an arrest necessarily entitles the officer to qualified immunity.  Rather, we agree with our sister circuits that the fact that an officer obtains a prosecutor's determination of probable cause prior to making an arrest is only one factor that is relevant to the qualified immunity analysis.  *See, e.g.*, *Cox v. Hainey*, 391 F.3d 25, 35 (1st Cir. 2004) ("We caution . . . that the mere fact that an officer secures a favorable pre-arrest opinion from a friendly prosecutor does not automatically guarantee that qualified immunity will follow."); *Frye v. Kansas City Mo. Police Dep't*, 375 F.3d 785, 792 (8th Cir. 2004) ("Although following

---

[4]Officer Clarkson also argues, for the first time on appeal, that in arresting Mr. Stearns he was merely carrying out the directive of his superior and was relying on his superior's determination of probable cause.  Because he did not raise this argument below, however, we do not consider it here.  *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1143 (10th Cir. 2009) ("Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal.").

an attorney's advice does not automatically cloak officers with qualified immunity, it can show the reasonableness of the action taken.") (quotations and alterations omitted). Furthermore, the significance of a prosecutor's pre-arrest probable cause determination to an officer's qualified immunity defense will invariably depend on the circumstances of a given case. *See Lavicky*, 758 F.2d at 476 (suggesting that an officer's reliance on a prosecutor's advice only supports the officer's defense when the officer's duty is unclear); *see also Cox*, 391 F.3d at 34 ("[T]he fact of the consultation [with a prosecutor] and the purport of the advice obtained should be factored into the totality of the circumstances and considered in determining the officer's entitlement to qualified immunity.").

Here, Mr. Smith's erroneous probable cause determination did not, as a matter of law, transform Officer Clarkson's unreasonable belief that probable cause existed to arrest Mr. Stearns into a reasonable belief. Officer Clarkson learned of Mr. Smith's involvement in the investigation through the page he received from Lieutenant Weber, which states only that Lieutenant Weber had discussed the case with Mr. Smith and that Mr. Stearns should be arrested for the incident at Officer Venable's house. Notably, the page does not mention any other incident for which Mr. Stearns was to be arrested. Furthermore, Officer Clarkson did not personally discuss the case with Mr. Smith, nor was he ever told that Mr. Smith had determined there was probable cause to arrest Mr. Stearns. Rather, he assumed that Mr. Smith had reached this conclusion based on the contents of the page and his general understanding that the Winfield Police Department

routinely carries out warrantless arrests based on oral communications from the county attorney.

Additionally, after receiving the page from Lieutenant Weber, Officer Clarkson reported to work where he was notified that Mr. Stearns had not yet been arrested. At that time, Officer Clarkson's fellow officers informed him of the circumstances surrounding the incident at Officer Venable's home and Mr. Stearns's early-morning interaction with Officer Venable. Specifically, Officer Clarkson learned that around 12:30 a.m., Mr. Stearns had knocked on Officer Venable's door and rang his doorbell, alarming Mrs. Venable. After approximately thirty seconds, Mr. Stearns walked away without interacting with anyone, although Mrs. Venable claims she heard him say the word "later." Three hours later, Officer Venable initiated contact with Mr. Stearns, during which Mr. Stearns used profanity repeatedly, criticized and insulted local officers, and refused to tell Officer Venable where he had been that evening, but complied with a request for identification.

Under these circumstances, Mr. Smith's erroneous determination that probable cause existed to arrest Mr. Stearns is of little significance to Officer Clarkson's qualified immunity defense. At the time he received Lieutenant Weber's page, Officer Clarkson may have reasonably believed that probable cause existed to arrest Mr. Stearns for disorderly conduct based on the incident at Officer Venable's home. Indeed, at that time, Officer Clarkson knew nothing about the case other than that his superiors had conferred with the county attorney and were ordering Mr. Stearns's arrest. Upon learning the

circumstances of the incident at Officer Venable's home, however, Officer Clarkson's belief became patently unreasonable.

Furthermore, because the page only mentioned the incident at Officer Venable's home, Officer Clarkson could only assume that Mr. Smith had determined probable cause existed based on that incident. Thus, Mr. Smith's pre-arrest probable cause determination is irrelevant to the reasonableness of Officer Clarkson's belief that probable cause existed to arrest Mr. Stearns for any other incident, including his early morning interaction with Officer Venable. And, as discussed above with regard to Mr. Smith, it was unreasonable to believe that Mr. Stearns's use of profanity and his criticism of police provided probable cause to arrest him for disorderly conduct. Accordingly, Officer Clarkson has not shown that his independent belief that probable cause existed to arrest Mr. Stearns was reasonable. Therefore, the district court correctly denied Officer Clarkson's motion for summary judgment based on qualified immunity.

c.    Deputy Campbell

Deputy Campbell argues that he is entitled to qualified immunity because he reasonably relied on the Winfield Police Department's probable cause determination and was merely assisting in the arrest at the Winfield Police Department's request. Mr. Stearns maintains that Deputy Campbell's reliance on the determination made by Office Clarkson and his superior officers that probable cause existed was unreasonable.

When one officer requests that another officer assist in executing an arrest, the assisting officer is not required to second-guess the requesting officer's probable cause

determination, nor is he required to independently determine that probable cause exists. *See Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1260 (10th Cir. 1998) ("An officer who is called to the scene to conduct a search incident to arrest is not required to reevaluate the arresting officer's probable cause determination in order to protect herself from personal liability."). Rather, "a police officer who acts in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable." *Id.* (quotations omitted).

Nevertheless, in attempting to overcome Officer Campbell's qualified immunity defense, Mr. Stearns cites only the limited personal knowledge that Deputy Campbell had at the time of arrest. Such personal knowledge is irrelevant, however, unless it in some way suggests that Deputy Campbell's reliance on the Winfield Police Department's probable cause determination was unreasonable. It does not. While the record does not support a conclusion that Deputy Campbell himself reasonably believed probable cause existed to arrest Mr. Stearns, it in no way undermines his reliance on "the flawed conclusions of [his] fellow police officers." *Id.* Therefore, the district court erred in denying Deputy Campbell qualified immunity.[5]

2.     *Strip Search: Sergeant Bumpas*

Mr. Stearns alleges that Sergeant Bumpas unlawfully strip searched him at the

_____

[5] Deputy Campbell also argues that despite the fact that he did not have personal knowledge of facts equating to probable cause, the "collective information" of all the officers is imputed to him under the "fellow officer" rule. *See Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985). Because we hold that Deputy Campbell reasonably relied on the other officers' probable cause determination, we do not address this argument.

- 16 -

Cowley County jail. The district court rejected Sergeant Bumpas's claim of qualified immunity. On appeal, Sergeant Bumpas contends that "the uncontroverted facts establish that [he] . . . had sufficient information for a reasonable suspicion as a matter of law."

"We have articulated two primary concerns in determining whether a strip search is reasonable for the purposes of the Fourth Amendment: whether a detainee is to be placed in the general prison population and whether there is reasonable suspicion that the detainee has concealed weapons, drugs, or contraband." *Archuletta*, 523 F.3d at 1284. "Reasonable suspicion for a search is a minimum level of objective justification based on the totality of the circumstances, taking into account an officer's reasonable inferences based on training, experience, and common sense." *Id.* (quotations omitted). An officer must, however, "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *United States v. Davis*, 94 F.3d 1465, 1468 (10th Cir. 1996) (quotations omitted).

Here, law enforcement never planned to place Mr. Stearns in the general population. At the time of Mr. Stearns's arrest, Officer Clarkson informed Mr. Stearns's grandmother that Mr. Stearns would be taken to the jail, booked, and then released on bond. Indeed, other than the time he spent in the booking room, Mr. Stearns remained in a holding cell the entire time he was at the jail and was never placed in the prison's general population. Thus, Sergeant Bumpas is not entitled to qualified immunity unless the facts taken in the light most favorable to Mr. Stearns establish reasonable suspicion to conduct the search. They do not.

- 17 -

Sergeant Bumpas maintains that at the time of the search, he had been told that Mr. Stearns was "going around following officers, and going to their homes, making threats." He concedes, however, that he was not aware of any specific threat and cites no specific and articulable facts suggesting that Mr. Stearns might be concealing weapons, drugs, or contraband. Instead, Sergeant Bumpas appears to have based the search upon an unparticularized suspicion of every arrestee brought to the jail. *See* Aplt. App. Vol. V at 1685 (Deposition of Steve Bumpas) ("I didn't have any reason to believe he didn't [have weapons]. I mean, that's just common practice, you know. You don't know—if you come in the jail, I don't know whether you have anything or not until you've been searched, you know?"). This is not a sufficient justification for a strip search. *See Chapman v. Nichols*, 989 F.2d 393, 398 (10th Cir. 1993) (concluding as a matter of law that a sheriff's belief that "a strip search policy applied to minor offense detainees without particularized reasonable suspicion was lawful if conducted in private" was objectively unreasonable). Accordingly, the district court properly denied Sergeant Bumpas's motion for summary judgment based on qualified immunity.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Mr. Smith's, Officer Clarkson's, and Sergeant Bumpas's motions for summary judgment. We REVERSE the district court's denial of Deputy Campbell's motion for summary judgment.