**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DAVID CHIMERA and BRENDA
CHIMERA,

      Plaintiffs–Appellants,

v.

RON LOCKHART, in his official
capacity as Sheriff of Sequoyah County;
JOHNNY PHILPOT, in his individual
capacity; TABBIE SUTTERFIELD;
JOEY OLIVER; MONTY DAVIS; and
DENNIS THOMAS,

      Defendants–Appellees.

No. 11-7053
(D.C. No. 6:09-CV-00498-FHS)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY, HOLLOWAY**, and **MATHESON**, Circuit Judges.

This case arises from the arrest of Plaintiffs–Appellants David and Brenda

Chimera on their property in rural Sequoyah County, Oklahoma. The Chimeras, a

married couple, had been locked in a feud for several months with one of their neighbors

over the use of an access road that crossed the Chimeras' land. A confrontation on that

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

road on December 30, 2008 led to the Chimeras' arrest for breach of the peace—a misdemeanor under Oklahoma law—by deputies of the Sequoyah County Sheriff's Department. Following their arrest, the Chimeras filed a civil-rights suit under 42 U.S.C. § 1983 against the sheriff, the deputies, and the neighbor. The Chimeras alleged various violations of their Fourth Amendment right to be free from unreasonable searches and seizures.

Finding that the Chimeras had not established a violation of their constitutional rights or a conspiracy between the defendants to violate those rights, the district court granted summary judgment to all of the defendants. The Chimeras now appeal. Exercising appellate jurisdiction under 28 U.S.C. § 1291, we AFFIRM in part and REVERSE and REMAND in part.

## I. BACKGROUND

The Chimeras and Defendant–Appellee Tabbie Sutterfield both purchased adjacent pieces of property near the town of Vian in far eastern Oklahoma. The two properties had previously been held by the same owner. Ms. Sutterfield's parcel of land is immediately to the north of the Chimeras' property. A narrow dirt road meanders from the southern edge of Ms. Sutterfield's property and down through the Chimeras' property until it meets a public county road that runs directly to the south of the Chimeras' land.[1] At two different points on the Chimeras' property, the road is crossed by gates, which

---

[1] The parties have described this dirt road as, among other things, an access road and a driveway. Photographs of the road contained in the record show it to be simply a rutted dirt-and-gravel country lane, with room only for a single vehicle to pass at a time. For consistency's sake, we will refer to it as an access road.

keep the Chimeras' livestock from straying. According to Ms. Sutterfield, this dirt road is the only way she can access her property from the county road. Use of this access road requires driving over a good portion of the Chimeras' land, and it is not disputed that the road is part of the Chimeras' property. The original owner's conveyance to Ms. Sutterfield did not include an express right of way or easement that would allow her use of the access road.

The Chimeras and Ms. Sutterfield became neighbors around the middle of 2008. Almost immediately, their shared use of the access road turned into a major source of rancor between them. The Chimeras thought Ms. Sutterfield and her guests were tearing up the access road with their vehicles, and Ms. Sutterfield believed the Chimeras were unreasonably trying to keep her from using the only route to and from her land. In July 2008, Ms. Sutterfield filed a state-court action to establish an easement across the Chimeras' property. That lawsuit remained pending and unresolved at the time of the events that gave rise to this case.

On the evening of December 29, 2008, Ms. Sutterfield left her home, started down the access road, and soon discovered that one of the Chimeras' gates was chained and nailed shut, effectively preventing her from leaving. Her grandson called the Sequoyah County Sheriff's Department for assistance.[2] Defendant–Appellee Dennis Thomas, a deputy sheriff, was dispatched to the property. In the meantime, one of Ms.

---

[2]     According to the Sequoyah County Sheriff's Department call sheet, the reason given for the emergency call was: "Neighbor has nailed my gate shut & I can't get out." App. at 199.

Sutterfield's friends had arrived to help her with the gate. Someone removed the gate from its hinges and moved it aside, allowing Ms. Sutterfield to pass.[3] Around this time, Mr. Chimera walked over and asked Deputy Thomas why his gate had been moved. Deputy Thomas advised Mr. Chimera and Ms. Sutterfield that their dispute over the access road and gate was a civil matter and that they should contact their lawyers. Deputy Thomas then left the scene.

The next day—December 30, 2008—the Chimeras, their two children, and Ms. Chimera's brother, William Redding, were on the Chimeras' property while Mr. Chimera and Mr. Redding repaired the previous night's damage to the gate. The Chimeras' young son had his BB gun with him. At some point, the Chimeras' son grew tired of carrying his BB gun and gave it to his mother to hold. Mr. Chimera and Mr. Redding had been working for about fifteen minutes when Ms. Sutterfield drove up to the gate. The access road was obstructed: Mr. Redding had parked his truck in the middle of the road, and he and Mr. Chimera were in the process of putting the gate back on its hinges. They did not halt their repairs to let Ms. Sutterfield through the gate.

Ms. Sutterfield promptly called the Sheriff's Department for assistance. The Sheriff's Department call sheet indicates the reason for the emergency call was: "Neighbors are blocking road—won't let me by." App. at 277. While sitting in her vehicle and waiting for the sheriff's deputies to arrive, Ms. Sutterfield took a series of photographs of the Chimeras and Mr. Redding with her digital camera. Not long

---

[3] The identity of the person who took the gate off its hinges is disputed by the parties, but the resolution of that factual dispute is not relevant to our determination here.

-4-

afterward, Mr. Chimera and Mr. Redding finished their repairs to the gate, and Mr. Redding moved his truck to the side of the access road. Ms. Sutterfield then drove her car through the open gate and waited for the officers to get there.

Defendants–Appellees Joey Oliver and Monty Davis, both Sequoyah County deputy sheriffs, arrived at the scene. After speaking with Ms. Sutterfield and viewing the photographs she had taken, Deputies Oliver and Davis arrested the Chimeras for breach of the peace. Because she pulled away from Deputy Oliver as he was handcuffing her, Ms. Chimera was also brought in for resisting arrest. The deputies did not question the Chimeras before arresting them, and they did not arrest Mr. Redding.

The Chimeras brought this action under 42 U.S.C. § 1983. In their complaint, they allege: that Deputy Thomas illegally entered their property on December 29, 2008; that Deputies Oliver and Davis arrested them without probable cause on December 30, 2008; and that Deputy Oliver used excessive force during the arrest. The Chimeras further allege that former Sequoyah County Sheriff Johnny Philpot is liable for failing properly to supervise Deputies Thomas, Oliver, and Davis. In addition, the Chimeras seek to hold Sequoyah County liable for the deputies' alleged constitutional violations by suing current Sequoyah County Sheriff Ron Lockhart in his official capacity. The Chimeras also allege that Ms. Sutterfield conspired with the other defendants to violate their constitutional rights. Finally, the Chimeras raise state-law tort claims that, although

framed rather vaguely in the complaint, relate to trespass and intentional infliction of emotional distress.[4]

Ms. Sutterfield separately moved for summary judgment on the Chimeras' conspiracy claim, and the district court granted her motion. The Sequoyah County defendants (Sheriff Lockhart, former Sheriff Philpot, Deputy Oliver, Deputy Davis, and Deputy Thomas) together moved for summary judgment on the claims against them, and the district court also granted judgment in their favor. The district court declined to exercise supplemental jurisdiction over the Chimeras' state-law tort claims.[5] The Chimeras now appeal, urging that the district court erred in granting summary judgment. The Chimeras also assert that the district court erred in failing to strike certain evidence and in denying their request for an extension of time to respond to Ms. Sutterfield's motion for summary judgment.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[4] The Oklahoma Supreme Court recognized intentional infliction of emotional distress as a distinct tort action in 1978. *See Breeden v. League Servs. Corp.*, 575 P.2d 1374 (Okla. 1978). For a seminal early discussion of the emerging tort of intentional infliction of emotional distress, see Calvert Magruder, *Mental and Emotional Disturbance in the Law of Torts*, 49 Harv. L. Rev. 1033 (1936). A professor of law at Harvard at the time he wrote the article, Calvert Magruder later became a long-serving Judge of the United States Court of Appeals for the First Circuit.

[5] The Chimeras did not raise the issue of the state-law claims in their briefing, and we do not discuss it here.

56(a). "We review a grant of summary judgment de novo, applying the same standard as the district court." *Hobbs* ex rel. *Hobbs v. Zenderman*, 579 F.3d 1171, 1179 (10th Cir. 2009). In reviewing the correctness of a grant of summary judgment, "[w]e view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* (quotations omitted).

We apply an abuse-of-discretion standard to the district court's procedural rulings here in question. *See Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005) (admissibility of evidence); *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1193 (10th Cir. 1998) (denial of motion for extension of time). Under this standard, we will not reverse a district court's decision absent "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Bryant*, 432 F.3d at 1122 (quotations omitted).

## B. Ms. Sutterfield and the Conspiracy Claim

Ms. Sutterfield first moved for summary judgment on the Chimeras' conspiracy claim against her, arguing she could not be held liable for conspiracy because she did not act in concert with the deputy sheriffs when they allegedly violated the Chimeras' constitutional rights. The district court agreed and granted summary judgment in Ms. Sutterfield's favor.

### 1. *The Requirement of Joint Action*

In order to be held liable under § 1983, the party committing the alleged constitutional violation must be a state actor or must be "jointly engaged with state officials in the challenged action." *Lee v. Town of Estes Park*, 820 F.2d 1112, 1114 (10th

Cir. 1987); *see also Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 595-96 (10th Cir. 1999). The district court concluded that the Chimeras failed to allege facts showing an agreement or joint action between the Sequoyah County defendants and Ms. Sutterfield. We agree with that ruling.

Although the Chimeras assert that the record sufficiently establishes that Ms. Sutterfield was a willing participant in a joint action, they do not point to any specific evidence in the record to support their position. Instead, the Chimeras appear to argue that Ms. Sutterfield should be held liable because she was the person who requested assistance from the Sequoyah County Sheriff's Department—an action that led to the alleged illegal entry, false arrest, and use of excessive force by Deputies Thomas, Oliver, and Davis. But "the mere furnishing of information to police officers who take action thereon does not constitute joint action under color of state law which renders a private actor liable under § 1983." *Lee*, 820 F.2d at 1115. The district court properly gave summary judgment to Ms. Sutterfield.[6]

2. *Procedural Objections Raised by the Chimeras*

We also reject the Chimeras' objection to the admission of certain affidavits attached to Ms. Sutterfield's motion for summary judgment. In the summary-judgment context, evidence is not required to be submitted "in a form that would be admissible at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Although testimony via affidavit may be inadmissible at trial, affidavits may properly be considered at the

---

[6] At oral argument, counsel for the Chimeras conceded their conspiracy claim was "tenuous at best."

summary-judgment stage on the theory that the same facts may ultimately be presented at trial in an admissible form. *See Bryant*, 432 F.3d at 1122. We see no abuse of discretion in the district court's decision not to strike the challenged affidavits.

Nor did the district court abuse its discretion in denying the Chimeras' motion for an extension of time to respond to Ms. Sutterfield's motion for summary judgment. The district court had initially granted a two-week extension to the Chimeras for their response to the summary-judgment motion, but declined to grant any further extensions. In denying the Chimeras' request for another extension, the district court explained that it "fail[ed] to see how plaintiffs have had inadequate time to conduct discovery on the issues present in the motion. They had almost an entire year after the lawsuit was filed to conduct such discovery . . . ." Appellees' J.A. at 27. The district court's ruling was not error.

### C.     The Claims Against the Sequoyah County Defendants

The Sequoyah County defendants—Sheriff Lockhart, former Sheriff Philpot, and Deputies Thomas, Oliver, and Davis—collectively moved for summary judgment, arguing they did not violate the Chimeras' constitutional rights. Alternatively, the Sequoyah County defendants argued they were entitled to qualified immunity as a defense against the Chimeras' claims. The district court concluded the Sequoyah County defendants were entitled to summary judgment on the merits as to the Chimeras' claims and did not reach the issue of qualified immunity.

### 1. *Procedural Objections Raised by the Chimeras*

We first turn to the Chimeras' argument that the district court erred in not striking photographs attached to the Sequoyah County defendants' motion for summary judgment. The Chimeras argue the photographs were hearsay, lacked proper foundation, and that the defendants could not provide a proper chain of custody. We conclude the district court did not err in declining to strike these photographs.

As we noted earlier, evidence at the summary-judgment stage does not need to be presented in a form that would be admissible at trial. In addition, Deputies Oliver and Davis had laid a proper foundation for the admissibility of the photographs at trial because their deposition testimony reflects that these were the digital-camera photographs that Ms. Sutterfield showed to them after they arrived at the Chimeras' property on December 30, 2008. "When evidence is unique, readily identifiable and relatively resistant to change, the foundation need only consist of testimony that the evidence is what its proponent claims." *United States v. Yeley–Davis*, 632 F.3d 673, 683 (10th Cir. 2011) (quotations omitted).

### 2. *The "Illegal Entry" Claim Against Deputy Thomas*

The Chimeras have failed adequately to brief, and thus forfeited review of, their "illegal entry" claim against Deputy Thomas. Although the Chimeras reference this claim in a heading, their opening brief contains no argument section that discusses the district court's decision regarding Deputy Thomas and his alleged illegal entry onto the Chimeras' property. "[We] routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson v.*

*Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). Mentioning an issue in an argument heading without pursuing it further is insufficient to preserve appellate review. Because the Chimeras' opening brief does not adequately raise and develop an argument on the district court's grant of summary judgment to Deputy Thomas on the illegal-entry claim, we conclude the Chimeras have forfeited any argument that the district court erred in giving summary judgment to Deputy Thomas.

3.  *The Excessive-Force Claim Against Deputy Oliver*

At oral argument, counsel for the Chimeras stated that the Chimeras were abandoning their excessive-force claim against Deputy Oliver. For that reason, we do not give further consideration to that claim. But we observe that, had the Chimeras' counsel not announced the claim's abandonment, review of that issue would nevertheless be forfeited due to inadequately developed briefing on appeal.

4.  *The False-Arrest Claim Against Deputies Oliver and Davis*

We next turn to the Chimeras' false-arrest claim. "[A]n arrest is the most intrusive of Fourth Amendment seizures" and "is reasonable only if supported by probable cause." *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (quotations omitted). "'Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person to be arrested.'" *Id.* (quoting *United States v. Alonso*, 790 F.2d 1489, 1496 (10th Cir. 1986)). The existence of probable cause is not measured by "[t]he subjective belief of an individual officer." *United States v.*

-11-

*Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004). Rather, the inquiry into probable cause

turns on "whether a reasonable officer would have believed that probable cause existed to

arrest the defendant based on the information possessed by the arresting officer." *Id.* at

896-97 (quotations omitted).

Deputies Oliver and Davis arrested the Chimeras for violating one of Oklahoma's

breach-of-the-peace statutes. The statute reads:

> If any person shall willfully or maliciously disturb, either by day or night, the peace and quiet of any city of the first class, town, village, neighborhood, family or person by loud or unusual noise, or by abusive, violent, obscene or profane language, whether addressed to the party so disturbed or some other person, or by threatening to kill, do bodily harm or injury, destroy property, fight, or by quarreling or challenging to fight, or fighting, or shooting off any firearms, or brandishing the same, or by running any horse at unusual speed along any street, alley, highway or public road, he shall be deemed guilty of a misdemeanor . . . .

Okla. Stat. tit. 21, § 1362.[7]

The Chimeras do not dispute that they temporarily blocked the access road or that

Ms. Chimera was carrying a BB gun. But the breach-of-the-peace statute does not

criminalize such conduct, and we see no evidence that the Chimeras engaged in any other

behavior that would fall within the statute's ambit. According to the district court, "there

was sufficient probable cause to arrest the Chimeras for breach of the peace because of

the *threatening* nature of their behavior by blocking the road with their vehicle and by the

fact Brenda Chimera was *brandishing* a weapon while blocking Sutterfield from the

---

[7]    The Oklahoma Statutes contain numerous provisions dealing with assorted disturbances to public order. Section 1362 is entitled "Disturbance by loud or unusual noise or abusive, violent, obscene, profane or threatening language."

-12-

road." App. at 524-25 (emphasis added). We disagree with this description of the events that took place on the Chimeras' access road on December 30, 2008.

The act of "brandishing" requires more than mere possession. To "brandish" a weapon is defined as "[t]o flourish, wave about (a sword, spear, dart, club, or other manual weapon) by way of threat or display, or in preparation for action."[8] Oxford English Dictionary at 264 (Compact ed. 1981). The word carries with it an element of open menace and impending aggression. Nothing in the record suggests that Ms. Chimera brandished her son's BB gun before she and her husband were arrested. In her affidavit attached to her motion for summary judgment, Ms. Sutterfield never uses any language stronger than "carrying" to describe Ms. Chimera's handling of the BB gun that day. *See* App. at 70-71.

Moreover, Deputy Oliver testified at his deposition that he knew the weapon in question was a BB gun and that Ms. Chimera had not pointed or waved it at Ms. Sutterfield. *See* App. at 249-50. The deputies also never confiscated the offending BB gun. Finally, the photographs that Ms. Sutterfield provided to the deputies depict Ms. Chimera holding the BB gun with the barrel consistently pointing toward or touching the ground. *See* App. at 208-29. None of the photographs shows Ms. Chimera "brandishing" the BB gun under any reasonable definition of the word.

Nor does any evidence indicate the Chimeras threatened Ms. Sutterfield in any way that squares with the conduct prohibited by the Oklahoma breach-of-the-peace

---

[8]     To "flourish," in turn, is "to wave about by way of show or triumph." Oxford English Dictionary at 1032 (Compact ed. 1981).

-13-

statute. Ms. Sutterfield told Deputy Oliver and Deputy Davis merely "that the Chimeras had blocked the exit from [her] home." App. at 71. No one asserts that the Chimeras directed abusive, violent, obscene, or profane language toward Ms. Sutterfield. No one disputes that the Chimeras had a right to be on their property to repair their damaged gate. And none of the photographs Ms. Sutterfield showed to the deputies supports the conclusion that the Chimeras were "threatening" Ms. Sutterfield. Perhaps tellingly, the Chimeras were never formally charged with violating the breach-of-the-peace statute. They were released very soon after being taken to the county jail. It is not even clear from the record whether the arresting deputies wrote a citation to Mr. or Ms. Chimera. If the citations exist, they have not been located. And it also appears that no official report of an arrest was ever made by either of the deputies in question.

Because the undisputed record evidence shows the Chimeras were engaged in conduct that is not criminal under the breach-of-the-peace statute, we conclude that Deputies Oliver and Davis arrested the Chimeras without probable cause. We will nevertheless affirm the district court's judgment in their favor if we determine the deputy sheriffs are entitled to qualified immunity because the law was not "clearly established" at the time of the challenged actions. *See Shroff v. Spellman*, 604 F.3d 1179, 1188 (10th Cir. 2010). "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010) (quotations omitted). It is clearly established under this circuit's case law that "an officer may not arrest an individual

-14-

without a warrant unless there is probable cause." *Id.* Even so, a defendant in a § 1983 action is entitled to qualified immunity for making a warrantless arrest without probable cause "if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Id.* (quotations omitted). "Thus, even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Id.* (alteration and quotation omitted).

In this case, the material facts are not in dispute as to what information the deputy sheriffs possessed when they decided to arrest the Chimeras for breaching the peace. They knew the Chimeras had blocked the road while working on their gate. They also knew that Ms. Chimera had been carrying a BB gun, but there was no showing that she had pointed it or waved it at anyone. These undisputed facts would not lead a reasonable officer to conclude that probable cause existed to arrest the Chimeras for a breach of the peace under title 21, section 1362 of the Oklahoma Statutes.[9] Because it was unreasonable for Deputy Oliver and Deputy Davis to believe probable cause existed to arrest the Chimeras, they are not entitled to qualified immunity on the false-arrest claim.

---

[9]    Under Oklahoma law, an officer may make a warrantless arrest for a misdemeanor only when the offense is committed in the officer's presence. *See* Okla. Stat. tit. 22, § 196; *Raymer v. City of Tulsa*, 595 P.2d 810, 812 (Okla. Crim. App. 1979). In this case, the Chimeras' alleged breaches of the peace—blocking the access road and "brandishing" a BB gun—were not witnessed by the arresting deputies. When they arrived on the scene, the access road was clear and the BB gun had been set down by the roadside. It thus appears that the sheriff's deputies did not comply with Oklahoma law governing warrantless arrests. This case does not present the question of whether an officer's violation of a state arrest statute can independently give rise to § 1983 liability, but we note in passing that the circuits to have addressed the issue have consistently held that it does not. *See,* e.g.*, Knight v. Jacobson*, 300 F.3d 1272, 1275-76 & n.3 (11th Cir. 2002).

*5.     The Claims Against Sheriffs Lockhart and Philpot*

For their final point of error, the Chimeras present a scant three sentences of argument concerning their claims against current Sheriff Lockhart and former Sheriff Philpot.  Those lines are followed by a string of citations to the record.  The Chimeras have not adequately explained or developed this issue.  They do not discuss the district court's decision or offer legal authority to flesh out their argument.  "Perfunctory complaints that fail to frame and develop an issue are not sufficient to invoke appellate review."  *Femedeer v. Haun*, 227 F.3d 1244, 1255 (alterations and quotations omitted).  Under these circumstances, we must conclude that the Chimeras have forfeited review of the district court's summary judgment in favor of both the current Sequoyah County Sheriff, Ron Lockhart, and the former Sequoyah County Sheriff, Johnny Philpot.

## III.     CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment in favor of Defendants Lockhart, Philpot, Sutterfield, and Thomas on all claims against them.  We **REVERSE** the district court's judgment in favor of Defendants Oliver and Davis on the false-arrest claim and **REMAND** for further proceedings not inconsistent with today's order and judgment.

Entered for the Court


William J. Holloway, Jr.
Circuit Judge