FILED
United States Court of Appeals
Tenth Circuit

October 23, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

RICHARD KAUFMAN,

      Plaintiff-Appellant,

v.

JONATHAN HIGGS, RICHARD P.
MILNER, and SCOTT LISKA,

      Defendants-Appellees.

No. 11-1390

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:10-CV-00632-LTB-MEH)**

John L. Springer, Aurora, Colorado, for Plaintiff-Appellant.

Patricia D. Herron of the Office of the Attorney General for the State of
Colorado, Denver, Colorado (Michael Turner Lowe of the Office of the Attorney
General for the State of Colorado, Denver, Colorado, with her on the brief), for
Defendants-Appellees.

Before **LUCERO**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

The appeal in this civil action is taken from the district court's order granting summary judgment to the Defendants-Appellees in a civil rights action brought under 42 U.S.C. § 1983. Plaintiff-Appellant Kaufman brought the action alleging that the Defendants had violated his constitutional rights by arresting him without probable cause. The district court had jurisdiction under 28 U.S.C. § 1343, and this court is granted appellate jurisdiction by 28 U.S.C. § 1291.

## I. BACKGROUND

On March 14, 2009, a tan Infinity hit an unoccupied car in a jewelry store parking lot. The Infinity was driven by a female and carried a male passenger. The driver inspected the car she had hit, conversed with her male passenger, and then drove away without leaving any information. Someone witnessed the incident, took down the Infinity's license plate number, and reported these observations to the Colorado State Patrol.

Troopers Higgs and Milner, two of the three Defendants-Appellants herein, investigated the report. They began by running a search on the license plate number of the Infinity and determined that it belonged to Mr. Kaufman, the Plaintiff-Appellant herein. The troopers also checked the jewelry store's receipt records and found that Mr. Kaufman had made a

purchase in the store a few minutes before the accident. Trooper Higgs tried to get in touch with Mr. Kaufman over the next couple of weeks. Eventually Trooper Higgs reached Mr. Kaufman by telephone. Trooper Higgs informed Mr. Kaufman about his investigation into the accident, and Mr. Kaufman agreed to allow Troopers Higgs and Milner to speak with him at his residence later that day.

At the meeting, Mr. Kaufman asked the troopers to reveal what they had learned during their investigation. The troopers declined to do so, but did tell Mr. Kaufman the name of the owner of the damaged car. Within the troopers' hearing, Mr. Kaufman called the victim and offered to pay for the damage incurred by the victim. The troopers then continued to question Mr. Kaufman. They asked him who was driving his vehicle on the day of the accident. Mr. Kaufman cited "privilege" and declined to identify the driver of his vehicle.[1]

Frustrated by Mr. Kaufman's silence, Trooper Milner contacted his supervisor, Corporal Liska, updating him on the interview. Corporal Liska,

---

[1]At some point during the interview, the troopers learned that Mr. Kaufman was an attorney, and the troopers now insist that Mr. Kaufman referred specifically to attorney-client privilege as the basis for his refusal to answer their questions. For his part, Mr. Kaufman says that he did not identify any specific privilege as the basis for his silence and intended to avoid incriminating himself as well as the driver of his vehicle.

the third Defendant-Appellee in this case, advised Trooper Milner that Mr. Kaufman could be arrested for obstruction of justice if he continued to refuse to identify the driver of his vehicle. Trooper Milner then presented Mr. Kaufman with two choices: reveal the driver's identity or be arrested for obstruction of justice. Mr. Kaufman declined to reveal the driver's identity and was arrested and taken to jail. Mr. Kaufman was issued a summons and complaint asserting that he had violated Colorado Revised Statutes § 18-8-104(1), Colorado's obstruction of justice statute. The charges against Mr. Kaufman were eventually dropped by the local district attorney's office.

Mr. Kaufman then filed this suit pursuant to 42 U.S.C. § 1983. Mr. Kaufman's complaint alleged violations of his Fourth and Fifth Amendment rights.[2] The Defendants moved for summary judgment on the ground of qualified immunity. In opposition to the summary judgment motion, Mr. Kaufman presented two theories of his case. First, he argued that he was subject to a false arrest in violation of his Fourth Amendment rights

---

[2]As to both constitutional theories, Plaintiff asserted that these basic provisions of the Bill of Rights are applicable against the State pursuant to the Fourteenth Amendment, an assertion that we accept because it is well established and not challenged in these proceedings. With this understanding of how the amendments apply in this context, this opinion will refer to the Fourth and Fifth Amendments for simplicity.

because Colorado's obstruction statute did not criminalize a refusal to answer police questions during a consensual encounter. Second, he argued that the Defendants infringed his Fifth Amendment rights by retaliating against him for asserting his Fifth Amendment privilege.

The district court granted the Defendants' motion for summary judgment. As to the Fourth Amendment claim, the court concluded that there was no false arrest because the troopers had probable cause to believe Mr. Kaufman's silence, accompanied by assertion of privilege, constituted a violation of the obstruction statute. As to Mr. Kaufman's Fifth Amendment retaliation claim, the district court concluded that *Chavez v. Martinez*, 538 U.S. 760 (2003), doomed Mr. Kaufman's argument. The court interpreted *Chavez* as precluding any section 1983 action based on an alleged violation of the Fifth Amendment unless a plaintiff had been made a witness against himself in a criminal trial. Noting that no criminal trial had taken place, the court rejected the Fifth Amendment claim.

Mr. Kaufman appeals from the grant of summary judgment to the Defendants. On appeal, Mr. Kaufman has abandoned his Fifth Amendment retaliation claim. He pursues only his argument that his Fourth Amendment rights were violated when he was arrested without probable

cause. For their part, the Defendants have never argued that their seizure of Mr. Kaufman was justified by suspicion about Mr. Kaufman's involvement with the hit-and-run accident; throughout this litigation, they have relied *only* on the theory that they could reasonably have believed that Mr. Kaufman's refusal to answer their questions during a consensual encounter constituted probable cause for his arrest for obstruction of justice.

## II. DISCUSSION

*A. Qualified immunity standard of review.*

We review the district court's grant of summary judgment de novo. "Summary judgment should be granted if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011). "Judgment as a matter of law is appropriate when the nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof." *Id.* (quotations omitted). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* (quotations omitted).

In this case the district court granted the Defendants' motion for summary judgment based on the doctrine of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Accordingly, to defeat an assertion of qualified immunity in a summary judgment motion, a plaintiff must properly allege a deprivation of a constitutional right and must further show that the constitutional right was clearly established at the time of the violation. *Koch*, 660 F.3d at 1238. Even though the plaintiff bears the burden of making this two-part showing, we "construe the facts in the light most favorable to the plaintiff as the nonmoving party . . . ." *Id.*

In the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime. *See, e.g., Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008); *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008). As to whether the law was clearly established at the time of the alleged violation, we require a section 1983

-7-

plaintiff to show that "it would have been clear to a reasonable officer that probable cause was lacking under the circumstances . . . ." *Koch*, 660 F.3d at 1241. As a practical matter, we implement this standard by asking whether there was "arguable probable cause" for an arrest – if there was, a defendant is entitled to qualified immunity. *Cortez v. McCauley*, 478 F.3d 1108, 1121 (10th Cir. 2007) (en banc).

To summarize, we proceed under a relatively straightforward two-part inquiry. First, we ask whether the officers had probable cause to arrest Mr. Kaufman. If we conclude that probable cause was lacking, we then must determine whether Mr. Kaufman's rights were clearly established, which we approach by asking whether the officers *arguably* had probable cause.

Although the analytical framework is relatively straightforward, we think it prudent to clarify one aspect that might seem incongruent – the role played by *state* law in determining whether Plaintiff can show a violation of his *federal* rights. Here, where the context is an alleged false arrest for a purported state offense, state law is of inevitable importance. The basic federal constitutional right of freedom from arrest without probable cause is undoubtedly clearly established by federal cases. *See, e.g., Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008). But the precise

scope of that right uniquely depends on the contours of a state's substantive criminal law in this case because the Defendants claim to have had probable cause based on a state criminal statute. And as to the interpretation of Colorado's criminal law, other than the statute itself (which we think is quite clear), the Colorado Supreme Court is the ultimate authority. So we look to the Colorado Supreme Court's decisions when inquiring whether the Defendants' interpretation of the obstruction statute was one that a reasonable officer would have held at the time of Mr. Kaufman's arrest.

### B. Was there probable cause to arrest Mr. Kaufman?

### i. The statute.

The Colorado statute at issue provides, in pertinent part:

> A person commits obstructing a peace officer . . . when, by using or threatening to use violence, force, physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority . . . .

Colo. Rev. Stat. § 18-8-104(1)(a).[3] The Defendants concede that Mr. Kaufman's conduct did not amount to the use or threatened use of

---

[3] We refer to the statute as the "obstruction" or "obstruction of justice" statute.

"violence," "force," or "physical interference." Their only contention is that there was probable cause to believe that Mr. Kaufman had used or threatened to use an "obstacle" which impeded them from carrying out their duties.

We disagree. Refusal to answer questions during a consensual encounter, expressed by silence and assertion of "privilege," is not an "obstacle" as the term is used in the statute.

At the outset, we note that we must assume that Mr. Kaufman made a general assertion of privilege, rather than referencing the attorney-client privilege. The Defendants' affidavits suggest that Mr. Kaufman made specific references to attorney-client privilege during their encounter, but Mr. Kaufman, in his own affidavit, specifically denies having done so. On summary judgment, we may not weigh the evidence. The district court correctly adhered to this principle by presuming that Mr. Kaufman had made a general assertion of privilege. Accordingly, the Defendants' efforts to frame Mr. Kaufman's behavior as an improper assertion of attorney-client privilege are unavailing at this stage.

An "obstacle" is "a thing that blocks one's way or prevents or hinders progress." Oxford New English Dictionary 1211 (3d ed.). Silence

-10-

accompanied by an explanation of the basis for that silence does not obstruct anything. In fact, it is hardly "a thing" at all. It is a null action; it simply maintains the status quo. Mr. Kaufman's silence here did *nothing* to the police's investigative efforts; it allowed them to continue unimpeded. They were able to continue putting questions to Mr. Kaufman, they could have sought out other members of Mr. Kaufman's family for questioning, and they could have even sought to compel Mr. Kaufman to answer their inquiries with a grand jury subpoena.

Further, we are guided by the principle of statutory construction *noscitur a sociis*, or "it is known by its associates." Black's Law Dictionary 1160-61 (9th ed.). Silence is *nothing* like physical force, violence, or interference. Indeed, it is antithetical to those categories of acts. We decline to read the word "obstacle" to include the most *passive* of all acts – remaining silent – when the other criminal acts involve *active* impeding of an officer or his investigation.

*ii. The* Dempsey *case*.

Beyond the text of the statute, the Colorado Supreme Court's interpretation of the statute at issue confirms our understanding of the word "obstacle." The Colorado Supreme Court has defined the terms "obstacle"

-11-

or "physical interference" in the obstruction statute: "The obstacle or physical interference may not be merely verbal opposition." *Dempsey v. People*, 117 P.3d 800, 810-11 (Colo. 2005). Furthermore, the court noted, "mere remonstration does not constitute obstruction." *Id.* at 811. "[M]ere verbal opposition" to the police does not suffice; instead, "a combination of statements and acts by the defendant, including threats of physical interference or interposition of an obstacle" is required. *Id.*

The *only* conduct by Mr. Kaufman that is relevant here was a refusal to answer questions and an extraordinarily brief explanation for that refusal. Because words alone are not enough, it follows *a fortiori* that silence is not enough. In *Dempsey*, the defendant's conviction was ultimately upheld under this standard because Mr. Dempsey had physically walked away from officers while placing his hands in his pockets, and then went on to physically struggle with the officers when they tried to write him a summons. *Id.* at 812. Moreover, by the time Mr. Dempsey engaged in this obstructionist conduct, the officers had already lawfully detained him to cite him for violating a different statute, and thus had the lawful authority to keep him under control.

Unlike the defendant in *Dempsey*, Mr. Kaufman took *no* action at all, obstructive or otherwise. Mr. Kaufman simply refused to speak. Given that Mr. Kaufman could not, under *Dempsey*, be arrested for "mere[ly] remonstrat[ing]," Mr. Kaufman most certainly could not be arrested for taking the lesser step of declining to speak at all.

*C. Was there "arguable probable cause" for the arrest?*

No reasonable officer could have construed Colorado's obstruction statute as criminalizing the choice to remain silent when faced with questions the answers to which might be incriminating. Even if the text of the obstruction statute were ambiguous (and it is not), the Colorado Supreme Court foreclosed the Defendants' interpretation with its opinion in *Dempsey*.

An unambiguous statute and a case from the state's highest court analyzing that statute and confirming its plain meaning are sufficient to "clearly establish" the contours of the Plaintiff's Fourth Amendment rights. Probable cause only arises when an officer reasonably suspects a criminal act has been committed. Because no officer could reasonably have thought Mr. Kaufman's silence constituted a criminal act, the Defendants violated

his clearly established Fourth Amendment right to be free from unreasonable seizures.

The Defendants counter by suggesting that our decision in *Koch v. City of Del City,* 660 F.3d 1228 (10th Cir. 2011)*,* sufficiently muddied the waters so as to make their conduct reasonable. We disagree. In *Koch*, which also involved a section 1983 false arrest claim, the defendant police officer was investigating the whereabouts of a missing elderly woman, a Ms. Lance. The plaintiff, Ms. Koch, was Ms. Lance's caretaker. In response to a petition by a concerned family member, a local court issued an order which required Ms. Koch to "immediately tell [Oklahoma Department of Human Services], Petitioner and Gladys Lance's family (relatives) the whereabouts of Gladys Lance and why she was removed from [Ms. Koch's] home." *Koch*, 660 F.3d at 1233. The order gave the family member the "authority to file missing persons police reports, *obtain law enforcement assistance*, and do that which is necessary to find the whereabouts of Gladys Lance." *Id.* at 1233-34 (emphasis added).

Several days after notice of the order was placed on Ms. Koch's door, the defendant police officer was investigating the situation. He initiated a

*Terry* seizure[4] of Ms. Koch at her home, and asked her to reveal Ms. Lance's whereabouts. Ms. Koch refused. The officer arrested Ms. Koch for a violation of Oklahoma's obstruction of justice statute. In her subsequent civil suit under section 1983, the Officer argued that Ms. Koch's refusal to answer his questions about Ms. Lance's whereabouts provided probable cause for a reasonable officer to believe that the crime of obstruction of justice had been committed.

We held that the arrest did not violate Ms. Koch's clearly established rights, but noted that the conclusion was "specific to the facts of [the] case." *Id.* at 1246. *Koch* is wholly distinguishable from Mr. Kaufman's case in two critical ways. First, *Koch* involved a refusal to cooperate in the context of a Fourth Amendment seizure that had already taken place. Here, on the other hand, the Defendants have never taken the position that their questioning of Mr. Kaufman, up until the moment of arrest, was anything other than a consensual encounter. And that makes a significant difference, because the defining characteristic of a consensual encounter is that a

---

[4]In *Terry v. Ohio*, 392 U.S. 1 (1968), the Court held that an officer may detain a person briefly for investigation if the officer has reasonable suspicion of criminal activity, although the circumstances fall short of what would be necessary to provide probable cause for arrest. We use "*Terry* seizure" as shorthand for the rule and for the detention in a case like *Koch*.

citizen may terminate the encounter at any time he pleases.[5]  The fact that a suspect is free to terminate the encounter necessarily incorporates the lesser right to remain silent as he wishes.   That freedom to terminate is not present in the context of a *Terry* seizure.

The Supreme Court's decision in *Hiibel v. Sixth Judicial District Court*, 542 U.S. 177 (2004), illustrates a related contrast.  In *Hiibel*, the Court held that officers may require a suspect to identify himself when subject to an investigatory detention.  That holding does not require a suspect to reveal his, or anyone else's, identity when that information reflects incriminating knowledge.  The identifying information that may be required pursuant to *Hiibel* is thus not testimonial in nature, and therefore not subject to the protections of the Fifth Amendment.

*Koch's* second important distinguishing characteristic is that the questions which Ms. Koch refused to answer were *exactly* the kind covered

---

[5] *See, e.g., Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) ("An officer is free to approach people and ask questions without violating the Fourth Amendment.  However, the person approached under these circumstances is free to refuse to answer questions and to end the encounter.") (internal citation omitted).  *See also, Florida v. Royer*, 460 U.S. 491, 497-98 (1983) ("The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.  He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds.") (internal citation omitted).

by the local court's investigative order. Thus, we held that it was not unreasonable for the officer to think that Ms. Koch had a *legal obligation* – arising from the judicial order – to reveal the information he requested, despite Ms. Koch's countervailing Fifth Amendment rights. In other words, we held that the officer was entitled to rely on the view that a *judicial order* required Ms. Koch to answer his questions. In Mr. Kaufman's case, on the other hand, we are given no reason to believe that Mr. Kaufman had *any* duty pursuant to a state statute, subpoena, or other judicial order to aid the police in investigating the reported accident. Instead, the Defendants *unilaterally* decided that they wanted certain potentially incriminating information from Mr. Kaufman. Thus, whereas the judicial order in *Koch* bolstered the reasonableness of the officer's belief that the suspect was *legally obligated* to reveal information, the Defendants in this case have no similar ground on which to lean.

In sum: the Defendants have never contended that their encounter with Mr. Kaufman was other than consensual; the law was well established that a citizen has no obligation to answer an officer's questions during a consensual encounter; and the Colorado Supreme Court had made it clear that the Colorado obstruction statute is not violated by mere verbal

opposition to an officer's questioning, thus making it beyond dispute Mr. Kaufman's conduct did not violate the statute. It follows that the Defendants could not have reasonably thought that they were justified in arresting Plaintiff and their motion for summary judgment on the ground of qualified immunity should have been denied. We should reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

### III. CONCLUSION

The judgment is REVERSED, and the cause is REMANDED as provided herein.