**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 20, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SHERIDA FELDERS; ELIJAH
MADYUN, a minor, by and through
LaToya Smedley, his mother,
DELARRYON HANSEND,

        Plaintiffs-Appellees,

    v.

JEFF MALCOM, an Iron County
Deputy and K-9 Unit Officer,

        Defendant-Appellant.

and

BRIAN BAIRETT, a Utah Highway
Patrol Trooper,

        Defendant.

No. 12-4154

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 2:08-CV-00993-CW)**

---

Frank D. Mylar, Mylar Law, P.C., Cottonwood Heights, Utah, for Appellant.

Robert B. Sykes (Alyson E. Carter and J.D. Lauritzen with him on the brief),
Robert B. Sykes & Associates, P.C., Salt Lake City, Utah, for Appellees.

---

Before **TYMKOVICH**, **SEYMOUR**, and **GORSUCH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

A Utah state trooper stopped Sherida Felders for speeding while on a trip from California to Colorado. Based on Felders's demeanor and several perceived inconsistencies in the stories of Felders and her passengers as to why they were traveling to Colorado, the trooper, Brian Bairett, asked to search Felders's car for drugs. After Felders refused, Bairett called for assistance from K-9 Unit officer Jeff Malcom to conduct a dog sniff on Felders's Jeep. The ensuing two-hour search yielded no drugs.

Felders and her passengers, Elijah Madyun and Delarryon Hansend, subsequently filed suit against Bairett and Malcom under 28 U.S.C. § 1983. They alleged, among other claims, that both Bairett and Malcom unlawfully searched Felders's car in violation of the Fourth Amendment. Malcom moved for summary judgment on the Fourth Amendment unlawful search claim based on qualified immunity.[1]

The district court denied Malcom's motion for summary judgment. The district court found as a matter of law that Malcom could not establish probable cause to search the car prior to conducting the dog sniff and that material facts

---

[1] Both Bairett and Malcom filed motions for summary judgment based on qualified immunity. Only Malcom appealed the district court's summary judgment order. Accordingly, we focus our attention only on the district court's findings as they relate to Malcom's motion for summary judgment.

were in dispute regarding (1) whether Malcom's canine, Duke, alerted prior to jumping into the vehicle; and (2) whether Malcom facilitated Duke's entry into the vehicle prior to establishing probable cause.

Malcom filed this interlocutory appeal from the district court's denial of qualified immunity. He argues that the district court erred in denying his motion for summary judgment because he had probable cause to search the car prior to conducting the dog sniff and, alternatively, that the law did not clearly establish that his actions during the sniff violated the Fourth Amendment.

We agree with the district court that Malcom did not have probable cause to search the vehicle prior to conducting the sniff. The information Bairett provided Malcom at most established a reasonable suspicion justifying the detention, and Malcom did not independently develop additional facts prior to conducting the sniff that could support a search. As to the permissibility of Malcom's actions during the dog sniff, genuine issues of material fact regarding Duke's alert and Malcom's facilitation of Duke's entry into the vehicle preclude us from finding that Malcom is entitled to qualified immunity as a matter of law.

Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the district court's summary judgment decision denying Malcom qualified immunity.

# I. Background

On a November morning, Trooper Bairett stopped Sherida Felders, a 54-year-old woman, on Utah's I-15 for speeding.  During the traffic stop, Bairett made several observations about Felders.  According to Bairett, she was nervous, she would not maintain eye contact with him, a strong odor of air freshener was coming from her vehicle, and affixed to her car was a license plate ring with "Jesus" written on it.  Based on these observations, Bairett became suspicious that Felders was carrying drugs in her car.

After issuing Felders a speeding ticket, Bairett asked to speak with her two passengers, Elijah Madyun and Delarryon Hansend, ages 17 and 18.  Madyun and Hansend were friends of Felders's grandson.  Based on several perceived inconsistencies between the passengers' narratives and Felders's story regarding the details of their trip, Bairett concluded he had a reasonable suspicion that Felders was transporting drugs.  He then directly asked Felders if she had cocaine in the car.  Felders replied that she did not.  She also denied having other drugs in the vehicle.  Following this exchange, Bairett asked Felders if he could search her car.  Felders refused.  Bairett then called for a K-9 unit to bring a dog to conduct a sniff of the car.  Deputy Malcom responded to Bairett's call and arrived at the site of the traffic stop approximately thirty minutes later.

When Malcom arrived, Bairett told him the facts of the encounter and that Bairett believed he had probable cause to search the car for drugs:

I wouldn't have called you out on this one if I wasn't pretty dang sure there's something going on. This lady–you know, I walk up to the car and I see air fresheners in the center console and . . . I start talking to her, you know, just "So where, you heading to?" "Oh going to Colorado," blah, blah, blah.

You know, she won't look at me when she's talking to me, she looks down, looks away (inaudible) going on here. That's what we're here to (inaudible).

Two kids in the car, about 20, with tats on them. . . . And I go up–she says–I says, "Who are these two in the car," and she says, "My grandkid's friends." I says, "You're [taking] your grandkids' friends to Colorado? What's the matter with your grandkids going to Colorado" (inaudible). "Oh, they already flew out." "So you're just taking your grandkids' friends to meet them up there?" "Yeah." "Okay."

So I go up and talk to them and say, "So who's this lady back here?" "Oh, that's our cousin." I asked her when did they plan on coming back to California. She says, "Oh, we're going to come back–we're going to stay until the 1st of December, through the holiday." Okay. So I go up and talk to them. "Oh, we're coming home Sunday–this Sunday." . . . He goes, "Oh [the grandkids] live in Colorado . . . But she said they already flew out. Just a whole bunch of inconsistencies.

So I come back to her and I said . . . "Ma'am, do you have cocaine in that vehicle?" She goes . . . (inaudible) . . . and face rubbing and . . . so I go through the whole thing and she just refuses to answer me on the cocaine question.

***

You know, the–all the symptoms are there, just huge symptoms. So if we don't find anything–I said, "So there's nothing illegal in the vehicle?" And she says, "No." I said, "So you won't mind if I search the vehicle, then, will you?" She goes, "No, you can't

-5-

search my vehicle." I said, "Well, I've got enough here to detain you until a dog gets here."

I basically–to me, I've got probable cause to search the vehicle without her permission or not, so I figured the dog would be the best route to go right now.

Aplt. App. 204. The conversation and subsequent search were captured by the patrol car's dashboard video camera.

After hearing the story, Malcom asked Bairett to "pull the two kids out of the car." *Id.* Bairett responded, "Yeah, that's what I was planning on doing. When they get out of the car, I'll leave the doors open." *Id.* The video footage taken from Bairett's car depicts Bairett opening the passenger doors and physically preventing the rear passenger from closing the door. Bairett also directed Felders to remove her Chihuahua from the rear hatch of the Jeep. In doing so, she left the back hatch open. Prior to initiating the dog sniff, Malcom commented to Bairett, "[N]ice of them to leave the door open for you," to which Bairett responded, "Yeah it was, wasn't it?" Aple. Supp. App. 14.

Malcom then conducted the dog sniff on Felders's car. After performing a pre-stimulation routine to prep the dog, Malcom took Duke on a leash to the right rear bumper and backed along the right side of the car, leaving about one foot of space between his body and the car. Duke almost immediately jumped in the vehicle through the open right rear passenger door, but the video does not show whether Duke made any sounds or movements before jumping into the vehicle.

-6-

Duke proceeded to the rear of the car and appeared to be "in odor," or taking deep breaths of air to pinpoint an odor. Aple. Supp. App. 32. Duke then alerted in the center console, which contained two bags of jerky. After removing the jerky, Malcom performed the search again. Duke alerted again between the seat and center console, and eventually sat down and indicated by the driver's door.

The officers then searched the vehicle for several hours but found no drugs.

## II. Analysis

Malcom argues that the district court erred in denying him qualified immunity because (1) he had probable cause to search the vehicle prior to conducting the dog sniff and, alternatively, (2) it was not clearly established law that his actions during the dog sniff violated the plaintiffs' Fourth Amendment rights.

We agree with the district court that Malcom did not have probable cause to search the car prior to Duke's alert and that the law was then clearly established that, absent probable cause, facilitating a dog's entry into a vehicle during a dog sniff constitutes an unconstitutional search. Taking the facts in the light most favorable to Felders, we conclude that fact questions exist regarding the timing of Duke's alert and Malcom's possible facilitation prior to an alert. As a result, we affirm the district court's decision to deny Malcom summary judgment on qualified immunity grounds.

### A. Qualified Immunity Standard of Review

We review the district court's qualified immunity determinations de novo, viewing the evidence in the light most favorable to the plaintiff as the nonmoving party. *Mick v. Brewer*, 76 F.3d 1127, 1134–35 (10th Cir. 1996); *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). To defeat an assertion of qualified immunity, the plaintiff bears the burden of showing both (1) a violation of a constitutional right; and (2) that the constitutional right was clearly established at the time of the violation. *Kaufman*, 697 F.3d at 1300. The burden then shifts to the defendant to show that there are no material issues of fact that would defeat the claim of qualified immunity. *Brewer*, 76 F.3d at 1134. "This requires the defendant to show that there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly established law and the information known to the defendant at the time." *Id.* In short, although we review the evidence in the light most favorable to the nonmoving party, the "record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

### B. Jurisdictional Prerequisites

Denials of qualified immunity may be directly appealed to the extent they turn on an issue of law. *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). On interlocutory review,

-8-

we ordinarily do not consider questions about what facts a jury might reasonably find—that is the exclusive job of the district court.  *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010); *see also Johnson v. Jones*, 515 U.S. 304, 307 (1995) (holding that denial of qualified immunity is not immediately appealable if "[t]he order in question resolved a *fact*-related dispute about the pretrial record, namely, whether . . . the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial.").

As a result, if the district court holds that a reasonable jury could find certain facts in favor of the plaintiff, we generally take these facts as true, even if the record would suggest otherwise upon our de novo review.  *Lewis*, 604 F.3d at 1225; *see also Plumhoff v. Rickard*, ___ S. Ct. ___, No. 12-1117, slip. op. 1, 1 (2014) ("Because this case arises from the denial of the officers' motion for summary judgment, we view the facts in the light most favorable to the nonmoving party . . . .").  Our jurisdiction is therefore limited to a review of the district court's abstract legal conclusions, in particular, "whether the district court's factual determinations, taken as true, 'suffice to show a violation of law,' and, further, 'whether that law was clearly established at the time of the alleged violation.'"  *Pahls*, 718 F.3d at 1228 (quoting *Lewis,* 604 F.3d at 1225); *Plumhoff*, No. 12-1117, slip. op. at 6.[2]  Finally, it should be remembered, "[d]etermining

---

[2]  We have held that this rule permits at least three exceptions.  *See Lewis*, 604 F.3d at 1225.  In *Lewis*, we stated that we may consider the facts underlying
(continued...)

whether there is a genuine issue of material fact at summary judgment is itself a question of law." *Lewis*, 604 F.3d at 1225 (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) (internal quotation marks omitted).

Here, the district court found that it was clearly established law that an improper search occurs if an officer facilitates a drug dog's entry into a vehicle before probable cause has been established. The court also found as a matter of law that Malcom did not have probable cause prior to conducting the sniff. But the district court ultimately denied summary judgment because issues of fact remained as to whether Malcom conducted an unconstitutional search, based on the timing of Duke's alert and Malcom's possible facilitation of Duke's entry into the car.

We have jurisdiction to consider Malcom's legal challenges to the district court's determination that (1) he lacked probable cause prior to conducting the dog sniff; (2) facilitating the entry of a drug sniffing dog into a vehicle without

---

[2](...continued)
the district court's order where (1) the district court "fails to identify the particular charged conduct that it deemed adequately supported by the record"; (2) the "version of events" the district court found a reasonable jury could believe is "blatantly contradicted by the record"; and (3) if the "reasonable factual inferences" are based on a complaint considered pursuant to a motion to dismiss. *Lewis*, 604 F.3d at 1225–26 (internal citations and quotation marks omitted). None of these exceptions apply to the instant case. Although Felders urges us not to adopt Malcom's version of the facts because it is "blatantly contradicted by the video evidence in the record," Aple. Br. at 26 (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)), we need not address this issue because we view the facts in the light most favorable to Felders, the nonmoving party.

probable cause violates clearly established law for purposes of qualified immunity; and (3) viewing the facts in the light most favorable to Felders, issues of material fact existed as to whether Malcom facilitated Duke's entry and whether Duke alerted prior to entering the car. Taking all facts in the light most favorable to Felders, we agree that Malcom did not have probable cause prior to conducting the dog sniff, the law was clearly established that facilitating a dog's entry into a car prior to establishing probable cause violates the Fourth Amendment, and that issues of fact remain regarding the timing of Duke's alert and Malcom's possible facilitation.

We address each issue in that order.

## C. Probable Cause to Search

### 1. Legal Framework

To determine whether Malcom conducted an unconstitutional search, we proceed under a two-part inquiry: "First, we ask whether the officers had probable cause [to search the plaintiff's property]. If we conclude that probable cause was lacking, we then must determine whether [the plaintiff]'s rights were clearly established, which we approach by asking whether the officers arguably had probable cause." *Kaufman*, 697 F.3d at 1300.[3] Arguable probable cause exists

---

[3] We recently determined that an officer's mistake of law cannot serve as a basis for probable cause, because a mistake of law by the person charged with enforcing it is not objectively reasonable and therefore violates the Fourth Amendment. *See United States v. Nicholson*, 721 F.3d 1236, 1239 (10th Cir.

(continued...)

-11-

where "a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Fleming v. Livingston Cnty.*, 674 F.3d 874, 880 (7th Cir. 2012) (citations and internal quotation marks omitted); *see also Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007) (en banc).

A search of a vehicle without probable cause violates the Fourth Amendment. *United States v. Ludwig*, 641 F.3d 1243, 1250 (10th Cir. 2011). Probable cause to search a vehicle is "established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008); *see also Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) ("A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." (citations and internal quotation marks omitted)). Probable cause does not "require the suspect's guilt to be 'more likely true than false.' Instead, the relevant question is whether a 'substantial probability' existed that the suspect committed the crime, requiring something 'more than a bare suspicion.'" *Kerns*

---

³(...continued)
2013). But this does not disturb the notion that qualified immunity still protects officials from civil liability for mistakes of law if reasonably made. *See Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).

*v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (citations omitted). "[O]fficers must consider the totality of the evidence known to them when considering probable cause, and in cases where they have both inculpatory and exculpatory evidence they must not ignore the exculpatory evidence in order to find probable cause." *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 637 (6th Cir. 2004).

A drug dog sniff outside a car during a lawful traffic stop is not a search. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (dog sniff of exterior of automobile during lawful traffic stop did not "implicate legitimate privacy interests"); *United States v. Engles*, 481 F.3d 1243, 1245 (10th Cir. 2007) ("A dog sniff of the exterior of a vehicle parked in a public place does not require reasonable suspicion because it is not a Fourth Amendment intrusion."). An exterior sniff therefore does not require a showing of probable cause, and a positive alert by a drug dog "is generally enough, by itself, to give officers probable cause to search the vehicle." *Ludwig*, 641 F.3d at 1250–51 (citations omitted); *Harris*, 133 S. Ct. at 1058 ("The question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test.").

But it is equally well-established that officers cannot rely on a dog's alert to establish probable cause if the officers open part of the vehicle so the dog may enter the vehicle or otherwise facilitate its entry. *See United States v. Vazquez*, 555 F.3d 923, 930 (10th Cir. 2009) (no constitutional violation where "(1) the dog's leap into the car was instinctual rather than orchestrated, and (2) the officers did not ask the driver to open the point of entry, such as a hatchback or window, used by the dog."); *see also United States v. Winningham*, 140 F.3d 1328, 1331 (10th Cir. 1998) (dog's jump into car through door officers opened and where evidence indicated a desire to facilitate the dog's entrance into the interior violated the Fourth Amendment); *cf. United States v. Stone*, 866 F.2d 359, 364 (10th Cir. 1989) (dog's instinctive leap into hatchback of car that defendant opened, absent any evidence that officers encouraged the dog's entry or asked defendant to open door so dog could enter did not violate the Fourth Amendment); *United States v. Sharp*, 689 F.3d 616, 619–20 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 777 (2012) ("It is a Fourth Amendment violation for a narcotics detection dog to jump into a car because of something the police did, like training the dog to jump into cars as part of the search or facilitating or encouraging the jump" but no violation occurs "as long as the canine enters the vehicle on its own initiative and is neither encouraged nor placed into the vehicle by law enforcement" (citations omitted)); *United States v. Pierce*, 622 F.3d 209,

213–15 (3d Cir. 2010) (same); *United States v. Lyons*, 486 F.3d 367, 373–74 (8th Cir. 2007) (same).

In other words, a trained dog's alert from areas where the motorist has no legitimate expectation of privacy—the exterior of the car or the interior of the car that the motorist has voluntarily exposed to the dog—provides sufficient probable cause to search the interior. But where there is evidence that it is not the driver but the officers who have "create[d] the opportunity for a drug dog to go where the officer himself cannot go," *Lyons*, 486 F.3d at 373 (citations and internal quotation marks omitted), the Fourth Amendment protects the driver's right to privacy to the interior compartment until the dog alerts from the exterior of the car. *Compare Winningham*, 140 F.3d at 1331 (illegal search where officers opened doors of a van, took the dog off its leash near the open door, and allowed the dog to jump into the van through the open door and sniff the interior) *and United States v. Forbes*, 528 F.3d 1273, 1278 (10th Cir. 2008) (agents directing defendant to unlock rear doors without asking for consent to search and then entering trailer with a drug sniffing dog could be an unconstitutional search), *with Lyons*, 486 F.3d at 373 (no unconstitutional search where defendant opened window without any verbal order or request and no orders from officer to keep windows open)*, and Sharp*, 689 F.3d at 618–20 (dog jumping through already open driver's window was not an unconstitutional search, even though the dog had a known habit of jumping into open car windows, absent any evidence that

-15-

police trained the dog to jump into vehicles or "did something to encourage or facilitate the jump").

## 2. Probable Cause to Search Prior to Duke's Alert

The district court found that Bairett did not have probable cause to search Felders's car prior to conducting the dog sniff. In response, Malcom contends he did have probable cause to search the car prior to the sniff because (1) he reasonably relied on Bairett's conclusion that probable cause to search the car for drugs existed; and, alternatively, (2) his own observations established probable cause to believe Felders had violated Utah's obstruction of justice statute by making false statements to Bairett. We examine each justification in turn.

### a. Probable Cause—Drugs

Malcom first argues he could reasonably rely on Bairett's conclusion that probable cause existed to search the car for drugs. We disagree.

Our cases allow officers as part of a common investigation to pool their collective knowledge in establishing probable cause. For example, an officer is entitled to rely on a radio request to stop and detain someone suspected of a crime without independently confirming that probable cause to arrest or detain exists. *See Whiteley v. Warden*, 401 U.S. 560 (1971); *United States v. Hensley*, 469 U.S. 221, 231 (1985). This so-called "collective knowledge" or "fellow officer" rule encompasses both "vertical" and "horizontal" components. Vertical collective knowledge exists if one officer *actually has* probable cause and instructs another

-16-

officer to act without communicating the information he knows that would justify the action. *Chavez,* 534 F.3d at 1345–46. Horizontal collective knowledge, in contrast, exists when many officers have "pieces of the probable cause puzzle, but no single officer possesses information sufficient for probable cause." *Id.* at 1345. In the latter situation, courts may consider whether officers who are acting together *collectively* possess sufficient information to support probable cause, provided that they have actually communicated the information to each other. *See United States v. Shareef*, 100 F.3d 1491, 1503–05 (10th Cir. 1996) (noting that horizontal collective knowledge only applies if information is shared).

The district court found that vertical collective knowledge did not apply because Bairett did not independently have probable cause to search Felders's vehicle. The district court also found that Malcom did not have probable cause based on horizontal collective knowledge because, before searching the car, Malcom only knew what Bairett had told him and therefore could not add anything to the collective "pool" of evidence. *Felders*, 885 F. Supp. 2d at 1206. Finally, the district court found that Malcom could not assert the "good faith defense" of reasonable reliance on information from a fellow officer because Bairett related to Malcom the material facts supporting Bairett's conclusion that probable cause existed and, in light of those facts, reliance on Bairett's conclusion was not reasonable because "Deputy Malcom was in a position to judge for himself whether there was probable cause to search the vehicle." *Id.* at

-17-

1207. The district court also concluded that Malcom did not actually rely on Bairett's assertion that probable cause existed, and so the good faith defense was unavailable. *Id.*

Malcom contends that the district court incorrectly stated and applied the collective knowledge doctrine. He argues he was entitled to rely on Bairett's flawed conclusions that Bairett had probable cause if Malcom's reliance was "objectively reasonable." Aplt. Br. at 16.[4] In other words, Malcom argues that he relied in good faith on Bairett's probable cause determination and this good faith reliance entitles him to qualified immunity. A police officer who acts "'in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable.'" *Stearns v. Clarkson*, 615 F.3d 1278, 1286 (10th Cir. 2010) (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1260 (10th Cir. 1998)); *Oliver v. Woods*, 209 F.3d 1179, 1190–91 (10th Cir. 2000) ("Police officers are entitled to rely upon information relayed to them by other officers in determining whether there is reasonable suspicion to justify an investigative

---

[4] Malcom conflates the "good faith defense" of reasonable reliance upon statements made by other officers with the "arguable probable cause" standard. The latter articulates the standard we use to determine whether a government officer's conduct violated clearly established law, *i.e.*, whether a reasonable officer could conclude that probable cause existed under the circumstances. *See Kaufman*, 697 F.3d at 1300. In contrast, the "good faith defense" may entitle an officer to qualified immunity because, if it applies, the officer did not commit a constitutional violation. *See Hensley*, 469 U.S. at 231.

detention or probable cause to arrest" but that "the reliance upon this information must be objectively reasonable" (citations omitted)).

The Supreme Court has held that the "good faith" an officer must possess in the context of the exclusion of evidence from an illegal search only applies where the police "act with an objectively 'reasonable good-faith belief' that their conduct is lawful." *Davis v. United States*, 131 S. Ct. 2419, 2427 (2011) (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)); *accord Herring v. United States*, 555 U.S. 135,142 (2009). In contrast, where the police "exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights," the good faith exception to the exclusionary rule does not apply. *Davis*, 131 S. Ct. at 2427 (citations and internal quotation marks omitted); *Herring* , 129 S. Ct. at 702.

The same standard of objective reasonableness from the "good faith" exception to the exclusionary rule applies in the qualified immunity context. *See Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 & n.1 (2012); *see also Malley v. Briggs*, 475 U.S. 335, 344–45 (1986). And we have applied the same "objective reasonableness" standard from the *Leon* context to qualified immunity appeals. *See Davis v. Gracey*, 111 F.3d 1472, 1480 (10th Cir. 1997). Accordingly, the "good faith" defense shields objectively reasonable good faith reliance on the statements of a fellow officer, but does not protect deliberate, reckless, or grossly negligent reliance on the flawed conclusions of a fellow officer.

-19-

We agree with the district court that Malcom is not entitled to the "good faith defense" because his reliance on Bairett's conclusion was not objectively reasonable. Although probable cause is based on the totality of the circumstances, all of the facts Bairett relayed to Malcom, even taken together, do not support probable cause. The facts Malcom knew—Felders's nervousness and unwillingness to look at Bairett, possible inconsistencies in travel narratives, a single air freshener, and a religious license plate frame—could justify no more than reasonable suspicion to conduct an investigative stop. A reasonable officer would not conclude that Felders was hauling drugs based on the statements or behavior of either Felders or her two teenage passengers.[5]

In sum, the law clearly provided that, to be entitled to a good faith defense, reliance on a fellow officer's conclusions must be objectively reasonable. *See, e.g.*, *Stearns*, 615 F.3d at 1286. We agree with the district court that Malcom could not reasonably rely on Bairett's statements to establish probable cause to search the car for drugs, nor would a reasonable police officer in Malcom's position conclude he had probable cause to search for drugs.

### b. Probable Cause—Obstruction of Justice

Malcom alternatively argues he independently had sufficient probable cause to search the vehicle on another basis. He contends that Bairett's information

---

[5] Malcom asserts he could assume Bairett had additional evidence, but it is clear from the record that Bairett supplied all the information he had.

gave him enough reason to believe Felders had committed the crime of obstruction of justice by lying to an officer in violation of Utah law.[6]  Malcom claims that Bairett's description of the traffic stop and interaction with Felders and the two passengers established they had provided false information with the intent to hinder his efforts to determine if she was hauling drugs.

We agree with the district court that Malcom did not have probable cause to believe Felders obstructed a lawful investigation.  Bairett never told Malcom that Felders had provided false information to Bairett.  All Malcom knew was that there were "inconsistencies" in the stories of Felders and her passengers.  For example, Bairett said that Felders stated the passengers were her grandkids' friends, whereas the two passengers said Felders was their cousin.  Aplt. App. 204.  Bairett also pointed out that Felders said that her grandkids flew out to Colorado from California, but the passengers said the grandkids lived in Colorado.  *Id.*  And Bairett commented that Felders told him they were planning on coming back to California in early December, whereas the grandkids said they were coming back in late November.  *See id.*

_____

[6]  Utah Code § 76-8-306 states: "(1) An actor commits obstruction of justice if the actor, with intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense . . . (i) provides false information regarding a suspect, a witness, the conduct constituting an offense, or any other material aspect of the investigation."

A reasonable officer would not conclude these statements, standing alone, established an intent to hinder an investigation. As the district court put it, the statements reflected, at worst, not obfuscation but mere miscommunication. *See Felders*, 885 F. Supp. 2d at 1203 & n.5 (noting that "part of the inconsistencies may have arisen due to cultural differences and miscommunication between the parties" and that "[m]ore careful questioning may have averted the perceived 'lies' and inconsistent stories"). Malcom would use the Utah obstruction statute as a sword to establish probable cause whenever a motorist told a suspicious story, a concept that stretches far beyond what our cases allow. In fact, on this record it is hard to say that the statements evinced any intent to hinder anything—let alone a drug investigation—especially in the context of a routine traffic stop for speeding.

It is worth pointing out, moreover, that when Bairett began asking Felders questions there was no ongoing investigation of conduct that constituted a criminal offense. A reasonable person would not conclude that Felders's statements, prior to even being asked if she was transporting drugs, would constitute providing "false information" with the intent to "delay [] or prevent the investigation" of a criminal offense. Utah Code § 76-8-306.

Malcom points to our decision in *Oliver v. Woods* as justifying at least arguable probable cause that obstruction of justice had occurred. 209 F.3d at 1190. In *Woods*, the defendant officer told a responding officer that he had found

the plaintiff's car in a parking lot where an alarm had been activated and the plaintiff had driven away after refusing to identify himself to the defendant officer. *Id.* at 1191. We held, based on this information, the responding officer had probable cause to *arrest* a plaintiff for "refusing to identify himself and leaving the scene of an investigation" in violation of Utah Code § 76-8-305.[7] But the plaintiff's conduct in *Woods* obviously violated the statute. Here, any potential obstruction of justice committed by Felders based on her explanations regarding her travels to Colorado or relationship to the passengers is only fanciful. A reasonable officer would not have concluded that Felders had committed obstruction of justice.

\* \* \*

In sum, Malcom did not have probable cause to search Felders's vehicle, either in reasonable reliance on Bairett's conclusion that Bairett had probable cause to search for drugs or independently because he believed Felders had obstructed justice.

---

[7] Utah Code Ann. § 76-8-305 makes it a misdemeanor if a person with "knowledge, or by the exercise of reasonable care should have knowledge, that a peace officer is seeking to effect a lawful arrest or detention of that person or another and interferes with the arrest or detention by . . . refus[ing] to perform any act required by lawful order: (a) necessary to effect the arrest or detention; and (b) made by a peace officer involved in the arrest or detention."

### D. *Facilitation*

Malcom also argues the law was not clearly established that his actions in conducting the dog sniff violated Felders's constitutional rights.

The second prong of the qualified immunity analysis shields a governmental official from liability unless "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (citations and internal quotation marks omitted). And for a law to be clearly established in this circuit, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Cortez*, 478 F.3d at 1114–15 (citations and internal quotations omitted). But still, officers may be on notice that their conduct violates the law even in "novel factual circumstances." *Id.* (citations and internal quotation marks omitted). The focus is on "whether the officer had fair notice that [his or her] conduct was unlawful." *Lynch v. Barrett*, 703 F.3d 1153, 1161 (10th Cir. 2013) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)), *cert. denied*, 133 S. Ct. 2352 (2013).

We further emphasize that in defining the "clearly established right" purportedly violated, we must take special care to "define the clearly established right at issue on the basis of the specific context of the case" and, in so doing,

avoid defining the "case's context in a manner that imports genuinely disputed factual propositions." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (citations and internal quotation marks omitted).

The district court found that the law clearly established "an improper search occurs if an officer facilitates a drug dog's entry into a vehicle before probable cause has been established" and that Bairett "intentionally orchestrated a situation where a drug dog would intrude into the privacy of Ms. Felders' vehicle and that Deputy Malcom may have participated as well." *Felders*, 885 F. Supp. 2d at 1209–10 (relying on *Stone*, 866 F.2d at 363; *Winningham*, 140 F.3d at 1330–31; *Kokinda v. Peterson*, 245 F. App'x 751, 756 (10th Cir. 2007)). In other words, the district court held that the law was clearly established that facilitation of a dog's entry into a car without probable cause violates the Fourth Amendment, and that questions of fact remained as to whether Malcom facilitated Duke's entry prior to establishing probable cause.

We agree with the district court's conclusion that the law was clearly established when Malcom conducted the dog sniff that facilitating a dog's entry into a vehicle without first establishing probable cause constitutes an improper search. *See, e.g.*, *Winningham*, 140 F.3d at 1330–31 (finding "[a] desire to *facilitate* a dog sniff of the van's interior" where officer who did not conduct sniff opened door of van and officer who conducted sniff unleashed dog as the dog neared the open door); *cf. Stone*, 866 F.2d at 363–64 (finding no facilitation

where car owner opened hatchback door and no evidence that "police handler encouraged the dog to jump in the car").

Malcom does not contest the district court's holding that the law was clearly established that an officer may not facilitate a dog's entry into the car prior to establishing probable cause. Rather, he argues that the facts in the record do not suggest that he violated this rule. We disagree. When the district court concludes that a reasonable jury could view the facts a certain way, we take them as true. *Lewis*, 604 F.3d at 1225; *see also Tolan*, 134 S. Ct. at 1866–68 (noting that an appellate court reviewing a denial of summary judgment for qualified immunity must view the evidence in the light most favorable to the nonmoving party and cannot ignore "key evidence offered by the party opposing the summary judgment motion"). Thus, at this stage in the litigation, we cannot rule out the possibility that Bairett caused the car doors to remain open, Malcom was aware that Bairett caused the car doors to remain open, and Duke failed to properly alert before entering the vehicle.[8] If that is what actually happened, then Malcom

---

[8] Malcom focuses on the fact that Bairett, not Malcom, opened the doors to the vehicle. He cites *Lyons* for the proposition that a police officer has no affirmative duty to close windows in preparation for a sniff. Aplt. Br. at 22 (citing *Lyons*, 486 F.3d at 373). But in *Lyons*, the court dealt with a situation where the *defendant*, not a fellow officer, had opened the car windows and there were no verbal orders or requests from the officer to keep the windows open. Here, in contrast, the record shows at least some evidence that Bairett prevented one of the defendants from closing the car door. Unlike in *Lyons*, then, Malcom and Bairett did not necessarily "[take] the situation as [they] found it." *Id.* (internal quotation marks omitted) (second alteration in original); *see also*

(continued...)

violated clearly established law. Malcom therefore cannot show that no factual disputes stand between him and qualified immunity.

To avoid this conclusion, Malcom asks us to assume an alternative fact pattern. For instance, he suggests that, because he was unaware of Bairett's involvement in leaving the doors open, it was not clearly established what steps he must take before conducting the dog sniff. Similarly, he asks us to make additional legal determinations about the clearly established law governing the nature of Duke's pre-entry alert based on his asserted fact that, among other things, "Duke is a big dog that does not like to jump in vehicles and [] had never before jumped in a vehicle when drugs had not been found." Aplt. Br. at 24. But, we cannot say, when viewing the facts in the light most favorable to Felders, that Malcom did not know Bairett intentionally held open the doors, or that Duke

---

[8](...continued)
*Vasquez*, 555 F.3d at 926–27, 930 (defendant opened window of car during initial traffic stop without direction from officers); *United States v. Woods*, 351 F. App'x 259, 261 (10th Cir. 2009) (defendant failed to close door when asked to step out of vehicle). Moreover, in *Winningham*, we held that *both* officers facilitated the dog's entry into the car, even though it was the officer who did not conduct the sniff who actually opened the car doors. 140 F.3d at 1330–31. It is therefore irrelevant whether Malcom actually physically opened the door if he was aware that Bairett had intentionally kept the doors open to facilitate Duke's entry into the car. There is at least some evidence that Malcom knew Bairett intentionally opened the door, and although Malcom stated that he did not hear Bairett say that he was planning on leaving the doors open and that he did not observe Bairett taking any action to keep the door open, the district court found that it was "for the jury to weigh the credibility of Deputy Malcom against the evidence from the dash cam video." *Felders*, 885 F. Supp. 2d at 1207.

alerted before jumping in the car in the first place. It follows then that we cannot determine whether qualified immunity applies in this context.

In sum, although phrased as legal inquiries, Malcom's arguments ultimately dispute the set of facts the district court determined for us and which *Lewis* requires us to assume. Because we conclude that issues of material fact exist as to whether Malcom's conduct violated Felders's clearly established constitutional rights, we agree with the district court that Malcom was not entitled to qualified immunity as a matter of law.

## III.  Conclusion

We AFFIRM the district court's determination denying Malcom summary judgment on qualified immunity grounds.